**The PEOPLE of the State of Colorado, Plaintiff-Appellee,**

v.

**David Allen SHAVER, Defendant-Appellant.**

**No. 80SA98.**

Supreme Court of Colorado, En Banc.

July 6, 1981.

---

J. D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Mary J. Mullarkey, Sol. Gen., Nathan B. Coats, Asst. Atty. Gen., Denver, for plaintiff-appellee.

J. Gregory Walta, Colorado State Public Defender, Thomas M. Van Cleave, III, Deputy State Public Defender, Denver, for defendant-appellant.

QUINN, Justice.

David Allen Shaver (defendant) appeals his conviction for Driving After Judgment Prohibited, section 42–2–206, C.R.S.1973. The defendant claims that the statutory scheme of the Habitual Traffic Offender Act, section 42–2–201 *et seq.*, C.R.S.1973, on which his conviction is based, violates due process of law and equal protection of the laws, *U.S.Const.* Amend. XIV; *Colo.Const.* Art. II, Sec. 25, and the constitutional prohibition against cruel and unusual punishment, *U.S.Const.* Amend. VIII; *Colo.Const.* Art. II, Sec. 20. He also asserts that the trial court erred in prohibiting him from

establishing the constitutional invalidity of three traffic offense convictions which formed the basis of an order of license revocation by the Department of Revenue (department). Although we find no merit in the defendant's constitutional challenges to the Habitual Traffic Offender Act, we conclude that the trial court failed to determine by appropriate standards the constitutional validity of the three traffic offense convictions underlying the order of revocation. We therefore reverse the judgment and remand for further proceedings.

## I.

The crime of Driving After Judgment Prohibited is defined in section 42–2–206(1), C.R.S.1973, as follows:

"It is unlawful for any person to operate any motor vehicle in this state while the revocation of the department prohibiting the operation remains in effect. Any person found to be an habitual offender, who is thereafter convicted of operating a motor vehicle in this state while the revocation of the department prohibiting such operation is in effect, is guilty of a class 5 felony."

A direct information filed against the defendant alleged that he committed the crime of Driving After Judgment Prohibited by operating a motor vehicle on January 20, 1978, in the City of Fort Morgan while there was still in effect an order of the department revoking his license as a habitual traffic offender.[1] The defendant entered a not guilty plea to the charge. Prior to jury selection defense counsel advised the court that he intended to challenge the admissibility of the defendant's three traffic offense convictions underlying his license revocation as a habitual traffic offender.

The prosecution's case consisted of two witnesses, and several documents of the department. A Fort Morgan officer testified that he arrested the defendant on January 20, 1978, in Fort Morgan for driving a

---

1. Section 42–2–202, C.R.S.1973, defines a habitual traffic offender as any person who has accumulated during a seven year period three or more convictions for certain separate and distinct offenses, including operating a motor vehicle while the license or privilege to drive has been suspended or revoked in violation of section 42–2–130, C.R.S.1973.

pick-up truck without a driver's license. The prosecution's other witness, an investigator for the department, was asked to identify several official records of the department pertaining to the defendant. These records included a written notice to the defendant of a revocation hearing and an order of August 30, 1976, revoking his driver's license for five years under section 42-2-203, C.R.S.1973, as a habitual traffic offender.

The defendant, outside the presence of the jury, objected to the admission of the order of revocation for the reason that the three traffic offense convictions supporting the revocation resulted from pleas of guilty in violation of his constitutional right to counsel and due process of law. The pleas were entered in the County Court of Morgan County to the three separate charges of driving under suspension, section 42-2-130(1)(a), C.R.S.1973 (1978 Repl. Vol. 8 and 1980 Supp.), all of which occurred within the requisite statutory period preceding the departmental order of revocation. Driving under suspension is a misdemeanor and carries a possible sentence of six months, with a mandatory minimum five day sentence in the absence of an emergency. The defendant received a jail sentence in each case. The register of actions for each case contained a space for the name of the defendant's attorney but the spaces were blank, thus indicating that the defendant was not represented by counsel. A document entitled "jail mittimus" recited, in each instance, that "David Allen Shaver has this

day been examined before Judge E. H. Brandenburg in and for the County aforesaid, on a charge of [d]riving under suspension preferred against him on complaint of Guy F. King which charge was distinctly read to the said David Allen Shaver to which he pled guilty . . . ." [2] Both the prosecution and the defendant stipulated that the tape recordings of the providency hearings on the defendant's guilty pleas had been erased. With permission of the court, defense counsel was permitted to supplement the record of his objection to the admission of the order of revocation by later calling the defendant as a witness outside the presence of the jury. The defendant testified that on each occasion when he pled guilty to the traffic offenses in question, he was not represented by an attorney.

The trial record contains no ruling by the court on the issue of whether the defendant made a prima facie showing that the three traffic offense convictions were obtained in violation of the defendant's right to counsel or in violation of due process of law. The trial court denied the defendant's objection to the admission of the order of revocation because, in its words, "they [traffic offenses] are not even your regular type of criminal misdemeanor act [and] Rule 11 doesn't even apply to six months in jail and a money fine."

The jury found the defendant guilty as charged and the court sentenced him to the Colorado State Reformatory for an indeterminate period not to exceed 2½ years.

2. The register for criminal action no. 1452–73 contains the following entry for September 20, 1973:

"Defendant appeared and was advised of his rights. Entered plea of guilty to the charge. Plea accepted by the court, defendant found guilty and fined $50.00 plus $6.00 court costs and sentenced to 5 days in the county jail."

The register for criminal action no. 780–74 states as follows for July 15, 1974:

"Defendant brought from custody and advised of his rights. Entered plea of guilty to both charges and waived formal proof. Pleas accepted by the court, defendant found guilty on both charges and fined $150.00 plus $46.00 court costs on the first charge and sentenced to 5 days in jail on the second charge."

Apparently, the reference to the first charge in criminal action no. 780–74 is the crime of driving under the influence, which was included in the summons and complaint along with the offense of driving under suspension. The jail mittimus, however, makes no mention of the crime of driving under the influence or the fine imposed by the court.

The register for criminal action no. 559–76 states the following for May 20, 1976:

"Defendant appeared and advised of his rights. Entered a plea of guilty to the charge and waived formal proof. Plea accepted by the court, defendant found guilty and fined $8.00 court costs and sentenced to 90 days in jail with sentence to begin immediately. Stay of execution granted for 90 days."

## II.

Initially we address the defendant's arguments that the statutory scheme of the Habitual Traffic Offender Act violates due process of law, *U.S.Const.* Amend. XIV; *Colo.Const.* Art. II, Sec. 25, equal protection of the laws, *U.S.Const.* Amend. XIV; *Colo. Const.* Art. II, Sec. 25, and the prohibition against cruel and unusual punishment, *U.S. Const.* Amend. VIII; *Colo.Const.* Art. II, Sec. 20. Each of these claims has been resolved adversely to the defendant by recent decisions of this court.

## A.

■ The defendant's due process claim is twofold. First he contends that the departmental hearing which resulted in the revocation of his license was a critical stage of the criminal prosecution against him for Driving After Judgment Prohibited and the statutory scheme for revocation proceedings under the Habitual Traffic Offender Act fails to provide those basic constitutional rights necessary for criminal prosecutions, including the right to counsel, the right to compulsory process for attendance of witnesses, and the right of confrontation and cross-examination.

We rejected an identical claim in *People v. McKnight*, Colo., 617 P.2d 1178, 1183–84 (1980), where we held:

"The administrative proceeding to revoke a driver's license because of habitual traffic offender status is a civil one. *People v. Able*, Colo., 618 P.2d 1110 (1980). The only immediate consequence of a determination that the licensee is a habitual traffic offender is a loss of his driver's license for a period of five years. Section 42–2–205, C.R.S.1973. Thus, the constitutional protections afforded criminal defendants need not be provided to the licensee in such a proceeding.

\* \* \* \* \* \*

"We conclude that the D.M.V. [Division of Motor Vehicles] administrative hearing which results in license revocation pursuant to section 42–2–203, C.R.S.1973, is not a 'critical stage' of the prosecution for Driving After Judgment Prohibited.

That hearing, therefore, need not be conducted as a criminal trial. This is true even though the administrative determination is an element of the criminal charge."

*Accord, People v. DeLeon*, Colo., 625 P.2d 1010 (1981).

■ The defendant bases his second due process argument on the proposition that the department's records do not establish that he was ever informed that an act of driving during the period of his five year revocation would subject him to a felony prosecution. We disposed of this argument also in *People v. McKnight, supra*, where we held that "[t]he requirements of due process are satisfied by the notice which is given through publication of the statutes." *Supra*, 617 P.2d at 1186. Therefore, the department is not required to notify persons adjudged habitual traffic offenders of the possible criminal penalty for driving in violation of the order of revocation. *Id.; People v. DeLeon, supra.*

## B.

■ The defendant claims an equal protection violation by virtue of the failure of the Habitual Traffic Offender Act to provide procedural protections similar to those required in a prosecution under the Habitual Criminal Act, sections 16–13–101 to 103, C.R.S.1973 (1978 Repl. Vol. 8 and 1979 Supp.). In *People v. McKnight, supra*, we held that the differences in procedures between a license revocation proceeding and those procedures applicable to a habitual criminal prosecution are reasonably related to legitimate state objectives. The subject matter addressed by these statutes is so different and the policy considerations underlying each statutory scheme are so distinct that "we cannot find the classifications unreasonable or lacking in a rational relationship to legitimate state objectives." *People v. McKnight, supra*, 617 P.2d at 1186; *People v. DeLeon, supra.*

## C.

■ The defendant asserts that section 42–2–206(1), C.R.S.1973, constitutes cruel

and unusual punishment because it punishes Driving After Judgment Prohibited as a class 5 felony with a term of confinement from one day to five years, with no possibility of a partial suspension of sentence or probation. We considered this argument in *People v. Scott*, Colo., 615 P.2d 680, 683 (1980), and there held that the punishment mandated is not "so disparate to the gravity of the offense as to constitute cruel and unusual punishment." We reaffirmed this holding in *People v. McKnight, supra*, and *People v. DeLeon, supra*, and we continue to adhere to it.

### III.

We find nothing in the record to support the defendant's claim that the trial court prohibited him from establishing the invalidity of the three prior traffic convictions. Rather, the record discloses that the court, after permitting the defendant to make a record, denied his challenge to these convictions, ruling that the requirements of Crim.P. 11 were not applicable to misdemeanor traffic offenses. The precise issue raised by this record, therefore, is whether the trial court properly admitted into evidence the order of revocation in the face of the defendant's challenge to the constitutional validity of the traffic offense convictions upon which it was based.

■ The trial of this case took place in 1978 and neither the trial court nor counsel had the benefit of our recent decisions addressing this issue. In *People v. Roybal (Roybal I)*, Colo., 618 P.2d 1121 (1980), we held that a defendant charged with Driving After Judgment Prohibited may collaterally attack the constitutional validity of traffic offense convictions which constitute the basis for the revocation of his license as a habitual traffic offender. "This rule is founded on the principle that an unconstitutionally obtained conviction cannot be used in a later proceeding to support guilt or enhance punishment." *Id.* 618 P.2d at 1122. The order of revocation being an essential element of the crime of Driving After Judgment Prohibited, it may not be admit-

ted into evidence at trial if the underlying convictions supporting the order were obtained in derogation of the defendant's constitutional right to counsel. *Id.*

■ In *People v. Roybal (Roybal II)*, Colo., 617 P.2d 800, 802 (1980), we extended this rule to include an order of revocation based on guilty pleas that were not "voluntarily and understandingly made." Thus, the constitutional standards for a voluntary and understanding plea of guilty clearly are applicable to the traffic offense convictions of driving under suspension. Contrary to the trial court's ruling, compliance with Crim.P. 11, although not conclusive of the issue, was an appropriate factor for the court to consider in resolving the defendant's challenge to the admission of the order of revocation.

■ The defendant's burden on a challenge to the admission of an order of revocation is to make a prima facie showing that one or more of the underlying convictions was constitutionally invalid. *People v. DeLeon, supra; Roybal II, supra; Roybal I, supra.* A prima facie showing in this context means evidence which, when considered in a light most favorable to the defendant and all reasonable inferences therefrom are drawn in his favor, would permit the court to find that one or more of the traffic offense convictions essential to the order of revocation was not obtained in accordance with the constitutional right to effective assistance of counsel or due process of law. *See, e. g., People v. Meyers,* Colo., 617 P.2d 808 (1980); *Roybal II, supra; Roybal I, supra; People v. Morrison,* 196 Colo. 319, 583 P.2d 924 (1978). Once the defendant makes such a showing, the prosecution must then establish that the conviction was constitutionally obtained. *People v. DeLeon, supra; Roybal II, supra; Roybal I, supra.* Because the issue relating to the order of revocation is one of admissibility, we believe the appropriate burden for the prosecution is to establish its constitutional validity by a preponderance of the evi-

dence.[3] *See Lego v. Twomey,* 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972); *People v. Smith,* 179 Colo. 413, 500 P.2d 1177 (1972); *see also People v. Meyers, supra.* This standard of proof on admissibility is to be distinguished from, and does not in any manner implicate, the prosecution's burden of proving to the jury the defendant's guilt beyond a reasonable doubt on all essential elements of the crime charged.

Here, the defendant testified that he was not represented by counsel at the entry of his guilty pleas to the three traffic offenses on which the order of revocation was based. The county court records contained no contrary indication and the tapes of the providency hearing had been erased. Under this state of the record we believe the appropriate procedure is to remand the case to the trial court to make those determinations necessary to the admissibility of the order of revocation. *See Roybal II, supra; Roybal I, supra.* If the trial court determines that the defendant has made a prima facie showing of the constitutional invalidity of the traffic offense convictions underlying the order of revocation, and the prosecution fails to establish by a preponderance of the evidence the constitutional validity of these convictions, then a judgment of acquittal should be entered on the charge of Driving After Judgment Prohibited. On the other hand, if the court determines that the defendant has not made a prima facie showing of the constitutional invalidity of the traffic offense convictions, or the court determines that, in spite of the defendant's prima facie showing, the prosecution has established the constitutional validity of these convictions by a preponderance of the evidence, then the judgment of conviction and the sentence imposed thereon should be reinstated. *See Huguley v. People,* 195 Colo. 259, 577 P.2d 746 (1978); *Compton v. People,* 166 Colo. 419, 444 P.2d 263 (1968).

As in *Roybal I* and *Roybal II,* the trial court on remand of this case should grant the parties the opportunity of presenting additional evidence relative to the validity of the traffic offense convictions underlying the order of revocation.

The judgment is reversed and the cause is remanded to the district court for further proceedings in accordance with the views herein expressed.

3. The judicial determination of the constitutional validity of the traffic offense convictions, as they relate to the admissibility of the order of revocation, is not reviewable by the jury. In this case the defendant tendered a jury instruction listing various factors essential to a constitutionally valid plea of guilty and advising the jury that unless they found the prior plea of guilty conformed to constitutional standards, the defendant should be acquitted. The trial court properly refused this tendered instruction. The constitutional validity of the prior convictions underlying the order of revocation involves an issue of constitutional admissibility and that issue is for the court, not the jury, to resolve.