The PEOPLE of the State of Colorado, Plaintiff-Appellant,

v.

Rudy MASCARENAS, Defendant-Appellee.

No. 81SA164.

Supreme Court of Colorado, En Banc.

Aug. 31, 1981.

Eugene Farish, Dist. Atty., Monte Vista, for plaintiff-appellant.

Bruce Boreson, Deputy State Public Defender, Alamosa, for defendant-appellee.

LOHR, Justice.

This is an interlocutory appeal by the district attorney in a prosecution of the defendant, Rudy Mascarenas, for Driving After Judgment Prohibited, section 42–2–206(1), C.R.S.1973. The district attorney challenges a ruling of the District Court for Rio Grande County that one of the traffic

offense convictions supporting an habitual traffic offender determination of the Department of Revenue, Motor vehicle Division (DMV), was obtained in violation of the defendant's constitutional right to counsel. *U.S. Const.* Amends. VI, XIV; *Colo. Const.* Art. II, § 16. The court concluded that the defendant made a prima facie showing, unrebutted by the prosecution, that he was not represented by counsel and had not waived such representation at the time he offered the plea of guilty upon which his traffic offense conviction was based. We conclude that the defendant did not make a prima facie showing that his right to counsel was violated and so reverse the ruling of the trial court.

A police officer stopped the defendant, who was driving a motor vehicle on the streets of Monte Vista, and cited him for attempting to elude a police officer, section 18–9–116.5, C.R.S.1973 (1978 Repl. Vol. 8), and driving a motor vehicle while his license was suspended for failure to furnish proof of financial responsibility, section 42–7–422, C.R.S.1973. Later, the district attorney learned that the DMV had found the defendant to be an habitual traffic offender and consequently had revoked his privilege to operate a motor vehicle prior to the incident for which he was stopped in Monte Vista. The district attorney then filed an "amended complaint/information,"[1] charging the defendant with Driving After Judgment Prohibited in addition to the two offenses for which he was originally cited.[2]

The defendant moved to dismiss the charge of Driving After Judgment Prohibited, or to suppress the underlying traffic offense convictions, on the basis that his constitutional right to counsel was violated in the proceedings which resulted in the three traffic offense convictions upon which the DMV's order revoking his driver's license was based. After a hearing, held immediately before a scheduled jury trial, the court ruled that the defendant's challenges to two of the convictions were not meritorious, but found that the third, a conviction in Denver County Court, had been obtained in violation of his constitutional right to counsel. The court suppressed that conviction; the district attorney then brought this interlocutory appeal.

I.

We have described the statutory framework for a charge of Driving After Judgment Prohibited in *People v. Roybal*, Colo., 617 P.2d 800 (1980) (*Roybal II*):

Section 42–2–203, C.R.S.1973, grants the Colorado Department of Revenue, Motor Vehicle Division (DMV), authority to revoke the driver's license of an habitual traffic offender for a period of five years. An habitual traffic offender is any person who, after notice and administrative hearing, is found by the DMV to have sustained a designated number of convictions for specified traffic offenses within a prescribed period of time. Section 42–2–202, C.R.S.1973. Operation of a motor vehicle while such a revocation is in effect constitutes the class 5 felony of Driving After Judgment Prohibited. Section 42–2–206, C.R.S.1973.

617 P.2d at 801.

A defendant charged with Driving After Judgment Prohibited has a right to challenge the constitutional validity of the traffic offense convictions which underlie that charge. *People v. Dooley*, Colo., 630 P.2d 608 (1981); *People v. Shaver*, Colo., 630 P.2d 600 (1981); *People v. DeLeon*, Colo., 625 P.2d 1010 (1981); *People v. Hampton*, Colo., 619 P.2d 48 (1980); *Roybal II, supra; People v. Roybal*, Colo., 618 P.2d 1121 (1980) (*Roybal I*); *People v. McKnight*, Colo., 617 P.2d 1178 (1980); *People v. Heinz*, 197 Colo. 102, 589 P.2d 931 (1979); *see People v. Able*,

---

1. The amended complaint/information was filed in county court. The defendant was bound over to district court after a preliminary hearing.

2. The eluding charge was amended downward to state an offense under section 42–4–1512,

C.R.S.1973 (1980 Supp.), a class 2 traffic offense; the original offense, charged under section 18–9–116.5, C.R.S.1973, is a class 1 misdemeanor. The charge under section 42–7–422, C.R.S.1973, was dismissed with the consent of the district attorney in pre-trial proceedings.

Colo., 618 P.2d 1110 (1980). Thus, a violation of a defendant's constitutional right to counsel in a traffic offense proceeding can be asserted as a defense in a subsequent prosecution for Driving After Judgment Prohibited based in essential part upon conviction of that traffic offense. *People v. Shaver, supra; People v. DeLeon, supra; People v. Hampton, supra; Roybal I, supra.*

 A defendant has the burden of making a prima facie showing that a challenged traffic offense conviction was unconstitutionally obtained; thereafter, the People must prove the conviction was obtained consistent with the defendant's constitutional rights. *People v. Shaver, supra; People v. DeLeon, supra; Roybal I, supra.* The question which we must decide here is whether the defendant made a prima facie showing that his constitutional right to counsel was violated in obtaining the third traffic offense conviction, entered in Denver County Court for driving while ability impaired, section 42–4–1202(1)(b), C.R.S. 1973.

## II.

 The only evidence bearing on the constitutional challenge is contained in that portion of the record of the Denver County Court proceeding which was received as a defense exhibit at the motion hearing. In that proceeding, the defendant was originally charged with driving under suspension, section 42–2–130, C.R.S.1973 (1980 Supp.), driving under the influence of intoxicating liquor, section 42–4–1202(1)(a), C.R. S.1973, failure to drive in a single lane, section 42–4–907, C.R.S.1973, and reckless driving, section 42–4–1203, C.R.S.1973 (1980 Supp.). The relevant documents which are part of the exhibit consist of a group of papers relating to the withdrawal of private counsel, an application for representation by the public defender, a mittimus and the docket sheets.

The docket sheets and other documents reflect that the defendant was represented by private counsel until January 20, 1978, when counsel's motion to withdraw was granted. On that same day, the defendant filed an application for representation by the public defender; the public defender endorsed on the application his determination that the defendant was indigent and entitled to the services of the state public defender; and the county court judge signed a determination form on that application with respect to the defendant's financial status. The form signed by the judge contemplated that he would circle one of four alternative determinations: the defendant "[is indigent] [is partially indigent] [is not indigent] [requires hearing]." The judge circled none of these alternative findings.

The mittimus, dated March 16, 1978, reflects that the defendant was examined before the county court judge, the charge of driving while ability impaired was read to him, he pled guilty and his plea was accepted. It contains no indication whether he was represented by counsel.

The docket sheets contain some information as to the defendant's representation by counsel. Near the top of the first page is a place for entry of name, address and telephone number of the attorney for the defendant. Private counsel's name appears there, crossed off with the notation "withdrawn" dated January 20, 1978. A motion and court order reflecting withdrawal of counsel also appear in the record. The application for representation by the public defender and the judge's execution of the incomplete determination of the defendant's financial status raise, but do not resolve, the question whether the public defender was appointed as substitute counsel. There was no testimony as to the administrative practice in Denver County Court for entry of the appearance of new counsel. Thus, we do not know whether the county court clerk would customarily note such an appearance on the docket sheet and, if so, whether that notation would be made on his own initiative or whether new counsel would be required to request such a notation. *See Roybal I, supra.* The entries in the "proceedings" section of the docket sheets are brief and are of no assistance in resolving whether counsel was present at

any particular hearing. One such entry shows that the date on which the defendant pled guilty to the reduced charge of driving while ability impaired, section 42–4–1202(1)(b), C.R.S.1973, was January 30, 1978, and that other charges against the defendant were dismissed on that same day on the district attorney's motion.

The district attorney attempted to call the defendant as a witness at the hearing on the motion to dismiss the charge of Driving After Judgment Prohibited. Although the defendant claimed his privilege against self incrimination, and this claim was upheld by the trial court, the defendant's counsel represented that the defendant had no recollection of the critical events and could not say whether he had been represented by counsel.

We have recently discussed the requirement that the defendant make a prima facie showing of constitutional invalidity of a challenged traffic offense conviction in *People v. Shaver, supra,* where we stated:

> A prima facie showing in this context means evidence which, when considered in a light most favorable to the defendant and all reasonable inferences therefrom are drawn in his favor, would permit the court to find that one or more of the traffic offense convictions essential to the order of revocation was not obtained in accordance with the constitutional right to effective assistance of counsel.... [Citations omitted.]

630 P.2d at 605. There is no affirmative evidence in the record that the defendant was denied the right to counsel in Denver County Court. No evidence was presented that, if the public defender had appeared as new counsel, his appearance would have been noted on the docket sheet as a matter of standard administrative practice. *See Roybal I, supra.* Compare the instant case with *United States ex rel. Lasky v. LaVallee,* 472 F.2d 960 (2d Cir. 1973) (conviction document which is silent as to presence of counsel when docket regularity would require that counsel's presence be noted raises a presumption that counsel was absent). There is no certificate reflecting that the Denver County Court records which make up the defendant's exhibit relating to the critical county court proceedings are all the records to be found in the court file in the case. The defendant has no recollection whether he was represented by counsel in Denver County Court according to his counsel in the instant case. Compare this case with *People v. Morrison,* 196 Colo. 319, 583 P.2d 924 (1978), where the prosecution wished to use for purposes of impeachment two convictions based on pleas of guilty, and we held a prima facie case of invalidity was created by the defendant's testimony under oath that he had not been represented by counsel and had not waived his right to counsel. Testing the record in the present case against the standard enunciated in *People v. Shaver, supra,* we conclude that the defendant has not made a prima facie showing that his right to counsel was denied in the proceeding which resulted in the challenged Denver County Court traffic offense conviction. *See People v. DeLeon, supra; see generally People v. Hampton, supra.*

The ruling of the district court is reversed and the matter is remanded to that court for further proceedings consistent with the views expressed in this opinion.