**The PEOPLE of the State of Colorado,
Plaintiff-Appellant,**

v.

**Michael Albert QUINTANA,
Defendant-Appellee.**

**No. 80SA351.**

Supreme Court of Colorado,
En Banc.

Sept. 14, 1981.

Robert L. Russel, Dist. Atty., David H. Zook, Deputy Dist. Atty., Colorado Springs, for plaintiff-appellant.

Larry J. Rodriguez, Colorado Springs, for defendant-appellee.

QUINN, Justice.

Pursuant to section 16–12–102, C.R.S. 1973 (1978 Repl. Vol. 8), the People appeal the trial court's dismissal of habitual criminal charges after a jury, in the first phase of a statutory bifurcated trial under the habitual criminal statute, section 16–13–101 *et seq.*, C.R.S.1973 (1978 Rep. Vol. 8), had returned a verdict of guilty to the substantive crime of second degree burglary of a building, section 18–4–203, C.R.S.1973 (1978 Repl. Vol. 8). The court dismissed one habitual criminal count on the basis of an inadequate judicial advisement during the providency hearing at which the defendant entered a plea of guilty. The court dismissed the two remaining habitual criminal counts because the substantive crime of second degree burglary of a building did not qualify under the habitual criminal statute as "a felony for which the maximum penalty prescribed by law exceeds five years." Section 16–13–101, C.R.S.1973 (1978 Repl. Vol. 8). We disapprove of the trial court's rulings but hold that the state constitutional guarantee against double jeopardy, *Colo.Const.* Art. II, Sec. 18, prohibits the retrial of the defendant on the habitual criminal charges.

## I.

The defendant, Michael Quintana, was charged by direct information with second degree burglary of a building on March 23, 1980, and with habitual criminality based on three prior felony convictions. The habitual criminal charges consisted of 1971, 1973 and 1975 convictions. The defendant entered a plea of not guilty to the substantive offense and denied the prior convictions.

The case was tried to a jury in a bifurcated proceeding, the first phase of which involved the crime of second degree burglary of a building and the second phase the habitual criminal charges. After the jury returned the guilty verdict and prior to the commencement of the second phase of the trial, the defendant moved to dismiss the habitual counts because his prior pleas of

guilty were not knowingly and voluntarily entered with full awareness of the consequences and, therefore, the convictions entered violated due process of law. The court had available to it various records, including the register of actions and the reporter's transcript of the providency hearing for the 1971 burglary case.

The court register disclosed that on August 4, 1971, the defendant appeared before the court, was advised of the charge and of his rights, and a public defender was appointed in his behalf. The defendant was present in court with his attorney on August 19, 1971, and entered a plea of not guilty, whereupon the case was set for a jury trial on November 1, 1971. On August 20, 1971, the day after the entry of the not guilty plea, the defendant and a co-defendant appeared with their respective attorneys and withdrew their previously entered not guilty pleas and pled guilty to second degree burglary. The register entry for August 20, 1971, states:

"Defendants withdraw their pleas of Not Guilty and enter pleas of Guilty as charged. Consequences explained, persist, pleas received and entered and matter continued to September 3, 1971 at 10:30 a. m. in Div. III for Pre-Sentence Investigation report. Trial date of November 1, 1971 vacated as to these defendants only."

The reporter's transcript of the providency hearing on the 1971 guilty plea consisted of six and one-half typewritten pages. It discloses that the court, addressing the defendant personally in the presence of his attorney, explained the charge to him, inquired about his state of mind and the voluntary nature of his plea, informed him of the privilege against self-incrimination, and advised him that the court would not be bound by any promises or representations made to him about the sentence. In connection with the defendant's right to a jury trial the following interchange took place between the court and the defendant:

"THE COURT: You understand you will not have a trial if you enter this plea of guilty?

"[THE DEFENDANT]: Yes."

Before accepting the plea of guilty the court addressed the defendant's attorney:

"THE COURT: Mr. O'Reilly, have you talked to him [the defendant]?

"MR. O'REILLY [Defendant's Attorney]: I have, Your Honor, and other people in my office have too; he definitely wants to enter this plea and he knows the consequences, and his plea is voluntary."

The trial court ruled that the defendant was not adequately advised of his right to a jury trial during the providency hearing and this deficiency rendered his 1971 conviction for second degree burglary constitutionally invalid. The habitual criminal count alleging the 1971 conviction accordingly was dismissed. The court denied the defendant's motion to dismiss the other habitual criminal counts.

The prosecution then presented its evidence before the jury on the two remaining counts relating to the 1973 and 1975 convictions for second degree burglary. At the conclusion of the prosecution's case the court stated that it would "direct a verdict in favor of the defendant." The court reasoned that the substantive count, which charged second degree burglary of a building on March 23, 1980, was a class 4 felony carrying a presumptive sentence of two to four years, section 18–1–105(1)(a), C.R.S. 1973 (1980 Supp.), and, therefore, it did not satisfy those terms of the habitual criminal statute which required the substantive offense to be a felony "for which the maximum penalty prescribed by law exceeds five years...." Section 16–13–101(1), C.R.S. 1973 (1980 Supp.).

The People on this appeal challenge the trial court's dismissal of the habitual criminal charges and argue that, if those rulings of dismissal were erroneous, the habitual charges should be reinstated and the defendant should be retried before a different jury. First we consider the constitutional validity of the defendant's 1971 burglary conviction, next the issue whether the class 4 felony of second degree burglary of a building qualifies under the habitual crimi-

nal statute as a felony punishable by a penalty in excess of five years, and lastly the double jeopardy considerations underlying the prosecution's request for a retrial.

## II.

■ A conviction obtained in violation of a defendant's right to counsel cannot be admitted in a subsequent criminal proceeding either to support guilt or to enhance punishment. *Burgett v. Texas*, 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967); *see also Loper v. Beto*, 405 U.S. 473, 92 S.Ct. 1014, 31 L.Ed.2d 374 (1972) (uncounseled conviction inadmissible for purpose of impeaching defendant's credibility). In *People v. Roybal (Roybal I)*, Colo., 618 P.2d 1121 (1980), we held that in a prosecution for Driving After Judgment Prohibited, a defendant may collaterally attack the constitutional validity of an uncounseled traffic offense conviction resulting in an order of license revocation because the order constitutes essential proof on the issue of guilt. *See also, e. g., People v. Mascarenas*, Colo., 632 P.2d 1028 (1981); *People v. Dooley*, Colo., 630 P.2d 608 (1981); *People v. Hampton*, Colo., 619 P.2d 48 (1980). We extended this right of collateral attack to guilty pleas that were not "voluntarily and understandingly made." *People v. Roybal (Roybal II)*, Colo., 617 P.2d 800, 802 (1980).

■ The right to collaterally attack the constitutional validity of a prior conviction applies equally to habitual criminal proceedings. *Burgett v. Texas, supra; People v. Lake*, 195 Colo. 454, 580 P.2d 788 (1978); *see also Baldasar v. Illinois*, 446 U.S. 222, 100 S.Ct. 1585, 64 L.Ed.2d 169 (1980). Upon challenging the validity of the prior conviction, the defendant's burden is to make a prima facie showing that the challenged conviction was unconstitutionally obtained; when such showing is made, the conviction is not admissible unless the prosecution establishes by a preponderance of evidence that the conviction was obtained in accordance with the defendant's constitutional rights. *People v. Mascarenas, supra; Peo-*

*ple v. Shaver*, Colo., 630 P.2d 600 (1981); *People v. DeLeon*, Colo., 625 P.2d 1010 (1981); *Roybal I, supra.*

■ In this case the trial court based its dismissal of the count alleging the 1971 burglary conviction on the ground that the judge during the providency hearing did not adequately advise the defendant of his right to a trial by jury and, therefore, the defendant's guilty plea was not voluntarily and understandingly made. With respect to the issue raised on this appeal, a prima facie showing means evidence which, when considered in a light most favorable to the defendant and all reasonable inferences are drawn in his favor, will permit the court to conclude that the defendant pled guilty without voluntarily and understandingly waiving his right to a trial by jury. *See People v. Mascarenas, supra; People v. Shaver, supra.*

The record in this case does not measure up to a prima facie showing of constitutional invalidity in connection with the defendant's plea of guilty. The court register affirmatively establishes that on August 19, 1971, the defendant was present in open court when the case was set for a jury trial. The reporter's transcript discloses that on the next day, with his attorney present, the defendant tendered a plea of guilty and acknowledged during the providency hearing that he was pleading guilty because he was in fact guilty, and that by so pleading he would not have a "trial." Never having requested a court trial, the right being waived obviously was the right to a trial by jury accorded the defendant on the previous day. The defendant's attorney told the judge during the providency hearing that the defendant wanted to plead guilty, that his plea was voluntary, and that he knew the consequences of his plea. Whatever verbal imprecision there might be in the word "trial," the use of this term, in the context of the total record, fails to establish a prima facie showing that the defendant's 1971 burglary conviction was unconstitutionally obtained.[1] Therefore the court

---

1. In 1971, when the defendant's plea was entered, Crim.P. 11(c) provided in pertinent part

that the court shall not accept the defendant's plea unless it determines that "he understands

erred in dismissing the habitual criminal count relating to this conviction and the order of dismissal is disapproved.

### III.

█ The court dismissed the two remaining counts alleging the 1973 and 1975 burglary convictions because, in its view, the substantive count of second degree burglary did not qualify as a felony punishable by a maximum penalty in excess of five years as required by section 16–13–101(1), C.R.S. 1973 (1980 Supp.). The court's dismissal cannot be reconciled with the statutory scheme governing habitual criminal proceedings.

Section 16–13–101(1) provides in pertinent part as follows:

"Every person convicted in this state of any felony for which the maximum penalty prescribed by law exceeds five years who, within ten years of the date of the commission of the said offense, has been twice previously convicted upon charges separately brought and tried ... of a felony ... shall be punished by confinement in a correctional facility for a term of not less than twenty-five years nor more than fifty years." [2]

On March 23, 1980, the date of the principal offense, second degree burglary of a building was classified as a class 4 felony. Section 18–4–203, C.R.S.1973 (1978 Repl. Vol. 8). On July 1, 1979, a presumptive sentencing law became effective for all crimes committed on or after that date. Colo.Sess. Laws 1979, ch. 157, § 25 at 672. While the presumptive range of penalties for class 4 felonies is two to four years, plus one year of parole, section 18–1–105(1)(a), C.R.S.1973 (1980 Supp.), subsection 18–1–105(6) makes clear that the presumptive penalty is not the "maximum penalty prescribed" for such crimes:

"If the court finds such extraordinary mitigating or aggravating circumstances, it may impose a sentence which is lesser or greater than the presumptive range; except that in no case shall the term of sentence be greater than twice the maximum nor less than one-half the minimum term authorized in the presumptive range for the punishment of the offense."

Clearly, a class 4 felony such as second degree burglary of a building could be punished by a sentence of eight years and, as such, qualifies under section 16–13–101(1) as a "felony for which the maximum penalty prescribed by law exceeds five years ...." The court's dismissal of the two counts alleging the 1973 and 1975 burglary convictions is disapproved.[3]

### IV.

We now consider whether the defendant may be retried on habitual criminality consistent with the double jeopardy clauses of the United States and Colorado Constitutions. *U.S.Const.* Amend. V; *Colo.Const.*

the right to trial by jury." Rule 11 contemplates that the transcribed colloquy between the court and the defendant will eliminate the need to resort to a subsequent fact-finding proceeding in order to determine whether a guilty plea was voluntarily and understandingly made. *McCarthy v. United States*, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969). Verbal formalism is not required for a valid waiver of a constitutional right upon the entry of a guilty plea. *United States v. Coronado*, 554 F.2d 166 (5th Cir. 1977); *People v. Canino*, 181 Colo. 207, 508 P.2d 1273 (1973). What is essential is that the defendant understand and voluntarily waive the constitutional right in issue. *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); *People v. Harrington*, 179 Colo. 312, 500 P.2d 360 (1972).

2. Under section 16–13–101(2), C.R.S.1973 (1980 Supp.), a person who has been three times previously convicted of felonies separately brought and tried "shall be adjudged an habitual criminal and shall be punished by imprisonment in a correctional facility for the term of his or her natural life."

3. What the court did here was to adjudicate the issue of habitual criminality based on a subjective determination that the defendant's commission of the burglary on March 23, 1980, did not warrant a sentence in excess of the presumptive range. The court's opinion about the propriety or impropriety of a maximum sentence for the defendant's conviction of the substantive offense is, simply stated, immaterial to the issue whether the substantive offense is a felony punishable by a maximum penalty in excess of five years.

Art. II, Sec. 18. Section 16–13–103(4), C.R. S.1973 (1978 Repl. Vol. 8), of the habitual criminal statute provides the foundation essential to our resolution of this question:

"(4) If the defendant denies that he has been previously convicted as alleged in any count of an information or indictment filed pursuant to subsection (2) of this section, the jury impaneled to try the substantive offense shall determine by separate verdict whether the defendant has been convicted as alleged. The procedure in any case in which the defendant does not become a witness in his own behalf upon the trial of the substantive offense shall be as follows:

(a) The jury shall return a verdict upon the issue of guilt or innocence;

(b) If the verdict is that the defendant is guilty of a felony, then the same jury shall forthwith proceed to try the issues as to whether the defendant has been previously convicted as charged. The prosecuting attorney has the burden of proving beyond a reasonable doubt that the defendant has been convicted as charged." [4]

Although the trial proceedings in this case were bifurcated, both phases of the trial were conducted, as prescribed by statute, before the same jury in one continuous proceeding. Jeopardy attached, therefore, upon the impaneling and swearing of the jury for the first phase of the trial on the substantive charge of second degree burglary of a building. *Crist v. Bretz*, 437 U.S. 28, 98 S.Ct. 2156, 57 L.Ed.2d 24 (1978). The People argue that notwithstanding the attachment of jeopardy, the defendant properly may be retried for two reasons: (1) the secondary phase of the trial on the habitual criminal charges constitutes a sentencing hearing only and, therefore, is beyond the scope of the double jeopardy prohibition; and (2) the dismissal of the two habitual criminal counts at the conclusion of the prosecution's evidence was not an "acquittal" and consequently a retrial will not violate double jeopardy principles. We reject the People's argument.

### A.

Since *Stroud v. United States*, 251 U.S. 15, 40 S.Ct. 50, 64 L.Ed. 103 (1919), it generally has been recognized that the Double Jeopardy Clause does not apply to sentencing decisions after retrial to the same degree that it prohibits redeterminations of guilt or innocence. *See also, e. g., United States v. DiFrancesco*, 449 U.S. 426, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980); *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). The imposition of a particular sentence is usually not regarded as an "acquittal" of a more severe sentence that originally could have been imposed. *North Carolina v. Pearce, supra.* Recently, however, the United States Su-

---

4. When the defendant elects to testify on the substantive offense and denies the prior convictions, section 16–13–103(5), C.R.S.1973 (1978 Repl. Vol. 8), provides that "the defendant, and the prosecuting attorney on rebuttal, shall present all evidence relevant to the issues of previous convictions, and the jury shall return verdicts on all issues relating to previous convictions if the defendant is found guilty of the substantive offense." In *People v. Chavez*, Colo., 621 P.2d 1362 (1981), *cert. denied,* —— U.S. ——, 101 S.Ct. 3019, 69 L.Ed.2d 398 (1981), we pointed out the dilemma for the defendant facing habitual criminal charges and desiring to testify on the substantive charge:

"The defendant facing habitual criminal charges is forced to choose between his constitutional right to testify in his own defense and his constitutional right to have the State prove the elements of habitual criminality. If he chooses to testify about his past record, the prosecution is relieved of

its burden of proving the elements of habitual criminality. The statutory procedure here suffers from the same flaw the United States Supreme Court condemned in *Simmons v. United States,* 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968): it creates an intolerable tension between two constitutional rights." 621 P.2d at 1365.

To alleviate this tension we held that, where a defendant elects to testify on the substantive charge, the trial court must instruct the jury "to consider any admissions of prior convictions elicited from the defendant in connection with his testimony on the substantive offense *only* as they affect his credibility" and "the prosecution must meet its burden of proving beyond a reasonable doubt the defendant's prior convictions by evidence independent of the defendant's testimony or duly authenticated records of those convictions." Colo., 621 P.2d at 1367.

preme Court recognized an exception to this principle. In *Bullington v. Missouri,* —— U.S. ——, ——, 101 S.Ct. 1852, 1862, 68 L.Ed.2d 270, 284 (1981), the Court held that the Double Jeopardy Clause prohibits the imposition of a death sentence upon a defendant who originally had been sentenced to life imprisonment under a state's bifurcated guilt and penalty proceeding:

> "Because the sentencing proceeding at petitioner's first trial was like the trial on the question of guilt or innocence, the protection afforded by the Double Jeopardy Clause to one acquitted by a jury also is available to him, with respect to the death penalty, at his retrial. We therefore refrain from extending the reasoning of *Stroud v. United States,* 251 U.S. 15, 64 L.Ed. 103, 40 S.Ct. 50 (1919), to this very different situation."

■ In Colorado the trial of habitual criminal charges stands in marked contrast to the ordinary sentencing hearing.[5] The habitual criminal statute requires the defendant to be notified of the prior convictions by separate counts in the information or indictment, section 16–13–103(2), C.R.S. 1973 (1978 Repl. Vol. 8), and to admit or deny the prior convictions at a formal arraignment, section 16–13–103(3), C.R.S.1973 (1978 Repl. Vol. 8). The statutory requirement of proof beyond a reasonable doubt manifests a deliberate legislative decision to impose on the state, rather than the defendant, the risk of an erroneous decision as to the prior conviction counts. *See, e. g., Bullington v. Missouri, supra; In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). The bifurcated trial and separate

verdict provisions are further manifestations of legislative intent to require that an adjudication of habitual criminality be made only in accordance with the same procedural and constitutional safeguards traditionally associated with a trial on guilt or innocence. *See People v. Chavez,* Colo., 621 P.2d 1362 (1981), *cert. denied,* —— U.S. ——, 101 S.Ct. 3019, 69 L.Ed.2d 398 (1981). Given this statutory structure, we conclude that the constitutional protection against double jeopardy applies to a defendant prosecuted as an habitual criminal.

### B.

We turn to the question whether the defendant may be retried for habitual criminal charges due to the trial court's erroneous decision in dismissing the habitual criminal counts at the conclusion of the prosecution's evidence during the secondary phase of the trial. The Double Jeopardy Clause of the United States Constitution prohibits a retrial when there has been post-jeopardy determination that the government's evidence is insufficient to establish guilt. *Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978); *accord Hudson v. Louisiana,* 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981). In *United States v. Scott,* 437 U.S. 82, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978), the United States Supreme Court held that a retrial is not barred under double jeopardy principles when the trial court erroneously dismisses a criminal charge on grounds unrelated to factual guilt or innocence, even though the dismissal occurs after jeopardy has already attached.[6]

---

**5.** In the usual sentencing hearing judicial focus centers on information which to a large extent is developed outside the courtroom and submitted to the sentencing judge in the form of a pre-sentence report. Section 16–11–102, C.R.S. 1973 (1978 Repl. Vol. 8 and 1980 Supp.). Generally, prior convictions are treated as matters in aggravation which may be considered by the court in its sentencing decision but they need not be alleged in a formal charging document nor must the prosecution have proved them beyond a reasonable doubt. *See* Crim.P. 32(b). Also, it is not unusual for the statutory scheme to grant the sentencing judge broad discretion in the form of alternatives to the imposition of

any term of imprisonment. Section 16–11–101, C.R.S.1973 (1978 Repl. Vol. 8 and 1980 Supp.).

**6.** In *Scott* the trial court, at the conclusion of the evidence, granted the defendant's motion to dismiss the indictment on grounds of preindictment delay. In holding that the federal Double Jeopardy Clause did not bar retrial, the Court overruled *United States v. Jenkins,* 420 U.S. 358, 95 S.Ct. 1006, 43 L.Ed.2d 250 (1975). *Jenkins* involved the trial court's dismissal of an indictment during a bench trial before the judge reached a verdict on the merits. The dismissal order was based on an interpretation of substantive law but the judge did not indicate what result he would have reached as the

The limitation which *Scott* imposed on the Double Jeopardy Clause of the United States Constitution runs counter to long-standing Colorado precedent prohibiting a retrial in spite of an erroneous acquittal or dismissal of a criminal charge after jeopardy has attached. *E. g., People v. Paulsen*, 198 Colo. 458, 601 P.2d 634 (1979); *Krutka v. Spinuzzi*, 153 Colo. 115, 384 P.2d 928 (1963); *see People v. Terry*, 189 Colo. 177, 538 P.2d 466 (1975); *Menton v. Johns*, 151 Colo. 276, 377 P.2d 104 (1962). This court decided *People v. Paulsen, supra*, after the Supreme Court's opinion in *United States v. Scott, supra*. In *Paulsen* we expressly refused to engraft the restrictive rule of *Scott* on the Colorado Double Jeopardy Clause, *Colo.Const.* Art. II, Sec. 18. The trial judge in *Paulsen*, at the close of the prosecution's case, erroneously granted the defendant's motion for a judgment of acquittal on grounds unrelated to factual guilt or innocence, namely "that the statute cited in the information, section 12–22–404, does not define the crime of possession of a dangerous drug with intent to dispense." 198 Colo. at ——, 601 P.2d at 635. We disapproved the judgment of acquittal but held that "[r]etrial is precluded even when the trial court erred as a matter of law in granting the judgment of acquittal." 198 Colo. at ——, 601 P.2d at 636.

■ *Paulsen* makes clear that the precise character of the trial court's judgment— whether an improper judgment of dismissal on grounds unrelated to factual guilt or innocence or an acquittal based on an erroneous application of evidentiary standards—is not determinative of the retrial

bar under the Colorado Double Jeopardy Clause. Nor is the court's characterization of its action as a dismissal, a directed verdict or an acquittal significant to the double jeopardy issue. *See, e. g., Krutka v. Spinuzzi, supra; Menton v. Johns, supra; Castner v. People*, 67 Colo. 327, 184 P. 387 (1919); *Roland v. People*, 23 Colo. 283, 47 P. 269 (1896). A retrial on a criminal accusation is prohibited whenever the first trial results in a final judgment favorable to the defendant. To permit a retrial under such circumstances would expose the defendant to that very same risk of repeated prosecutions which the Double Jeopardy Clause was designed to prevent.[7]

■ Where, as here, a trial court dismisses a criminal charge after jeopardy has attached, Colorado constitutional doctrine prohibits the state from subjecting a defendant to a retrial involving the resolution of factual issues underlying the criminal accusations, notwithstanding the trial court's erroneous interpretation or application of substantive law in terminating the proceedings in the defendant's favor.[8] Effective correction of the trial court's erroneous rulings in this case is impossible without a retrial on the factual issues inherent in the habitual criminal charges. The Double Jeopardy Clause of the Colorado Constitution prohibits such a retrial. Appellate relief under such circumstances is limited to our disapproval of the dismissal of the habitual criminal charges and the judgment entered thereon.

The judgment is disapproved.

trier of fact if a contrary interpretation of law had been adopted. The Court in *Jenkins* held that, whether or not the post-jeopardy dismissal amounted to an acquittal on the merits, the Double Jeopardy Clause barred retrial because further trial proceedings would be required to resolve factual issues underlying the offense charged.

7. We are not dealing in this case with a post-jeopardy dismissal based on the trial court's subject matter jurisdiction or the sufficiency of the information to allege an offense. *See Lee v. United States*, 432 U.S. 23, 97 S.Ct. 2141, 53 L.Ed.2d 80 (1977); *People v. Garner*, 187 Colo. 294, 530 P.2d 496 (1975). Accordingly, we express no opinion on the issue whether the state

Double Jeopardy Clause would prohibit retrial under those circumstances.

8. If the trial court had dismissed the habitual criminal counts after the jury had returned a verdict finding that the defendant had been previously convicted as charged, an appellate reversal of the dismissal would not require a retrial on additional factual issues. Under those circumstances it would seem that the Colorado Double Jeopardy Clause should not prohibit the reinstatement of the conviction entered on the jury verdict. *See United States v. Wilson*, 420 U.S. 332, 95 S.Ct. 1013, 43 L.Ed.2d 232 (1975). However, we defer any ruling on this issue to another day.