[No. 7260.]

## TROZZO V. THE PEOPLE.
## DOE v. THE PEOPLE.

1.   CONSTITUTIONAL LAW—*Requirements in Legislation*—The section of the constitution relating to the title of bills (Sec. 21 Art. V.) must receive a reasonable construction. If the bill treats of but one general subject, and that is expressed in the title, this is sufficient—(326).

The penalties prescribed for the violation of a statute are germane to so much of it as defines and denounces the crime, and need not be referred to in the title; but a title which by general words refers to the crime, and then to the punishment thereof, as by the phrase "and providing punishments," etc., is not within the prohibition of the constitution—(326).

The title "An act concerning certain forms of prostitution and providing punishments for persons encouraging prostitution in violation of this act" (Laws 1909 c. 196) contains but one subject and is not open to objection—(328).

2.   CRIMINAL LAW—*Consolidation of Indictments*—Two indictments were pending against different defendants for the violation of the same section of the same statute; the crimes charged were committed at the same time and place, as disclosed by the record, and the facts as to the two were intermingled the one with the other. They were properly consolidated under the statute (Rev. Stat. sec. 1953, Mills Stat. sec. 1452)—(329).

3.   EVIDENCE—*Bias of Witness*—An accused person is entitled to show an unfriendly disposition on the part of a witness for the prosecution, and threats made by such witness against him. The exclusion of such evidence is error. · That the witness whose animus is so in question is declared by the trial judge, in refusing a new trial, to have disclosed by her acts and demeanor on the stand, the malignity attributed to her is not sufficient, on error brought, to warrant affirmation of the conviction. The demeanor of the witness cannot be presented in the record, and it is not to be said that the jurors and the trial judge were of the same mind as to the matter—(330. 331).

The error was aggravated by afterwards permitting the prosecution to show the friendly disposition towards the accused of a witness sworn in his behalf—(332).

4.   CRIMINAL LAW—*Statute Construed*—The statute (Laws 1909 c. 196 Sec. 2) declares that "any male person * * * who shall engage or assist in operating or managing" any house,

&c., for the purpose of carrying on prostitution, shall be deemed guilty of felony. *Held*, that in order to a conviction it must be shown that the accused had control of and conducted, or assisted in the management of the affairs of the house, so as to be in some manner responsible for the immoral practices there carried on; or must at least have been so in control as to be able to bring about, or assist in bringing about, such immoral practices; that to merely aid, abet, advise, or encourage another in the conduct of the house is not within the statute, and that to so construe it was to read into it the descriptive elements of an accessory, and so enlarge it by construction.

The statute declared that "any person * * * who shall knowingly live on or be supported in whole or in part by the money or other valuable consideration realized, procured or earned by any female person through the prostitution of any other female" shall be deemed guilty of felony.

*Held*, that there could be no conviction where the proceeds of prostitution were received by the accused, knowingly, from the keeper of a brothel to pay a debt due him, or redeem a pledge for her, or where he had received such moneys, received by the brothel-keeper as the proceeds of another woman's prostitution, without anything done, or consideration parted with by the brothel-keeper, nor where the accused had received such proceeds of prostitution for a different purpose, and had afterwards applied a part of it to his own maintenance—(334-337).

5. ——*Instructions*—In the trial of one charged as a principal the statutory provisions as to accessories have no application, and the instruction should be limited accordingly—(338, 339).

*Error to Pueblo District Court*—HON. C. S. ESSEX, Judge.

Mr. M. G. SAUNDERS for plaintiff in error.

HON. BENJAMIN GRIFFITH, attorney general, Mr. CHARLES O'CONNOR, assistant attorney general, Mr. JOHN T. BARNETT and Mr. EUGENE A. MORAN for the people.

Mr. JUSTICE HILL delivered the opinion of the court:

The plaintiff in error was tried upon two indictments; each charged a separate offense; both were for the violation of an act entitled "An act concerning certain forms of prostitution and providing punishment for persons encouraging prostitution in violation of this act." Approved April 26, 1909. The first indictment, in substance, charges him with feloniously engaging and assisting in operating and managing a certain house for the purpose of carrying on prostitution; the second, with feloniously and knowingly living on, and being supported, in part, by the money and other valuable considerations realized, procured and earned by one Winnie Stevens, a female person, through the prostitution of one Blanche Bennett, another female person. By proper motion to quash the indictments, the constitutionality of this act was challenged. This motion was overruled. On motion of the District Attorney, over the objections of the defendant, the causes were consolidated for trial; the defendant was convicted upon both indictments and brings the causes here for review upon error.

Four groups of assignments of error are urged; as some of them necessitate a reversal of the judgment, in view of a new trial it is proper to consider them all; this will be done in the order presented.

It is urged that this act contravenes section 21 of article 5 of the state constitution, in that its title contains more than one subject of legislation and that various subjects in the act are not expressed in the title. A very able and ingenious argument has been presented in support of this position. This section of the constitution reads:

"No bill, except general appropriation bills, shall be passed containing more than one subject, which shall be clearly expressed in its title; but if any subject shall be embraced in any act which shall not be

expressed in the title, such act shall be void only as to so much thereof as shall not be so expressed."

From this language it will be observed, that, to dispose of the defendant's contentions it is only necessary to consider: First, does the title contain but one general subject? Second, does the act contain a subject which is clearly expressed in the title? And third, do the charges made against the defendant come within the provision of the one subject which is clearly expressed in the title?

This section of the constitution has been before this court for consideration in several cases where it was claimed its provisions were violated. At first glance several subjects usually appear to be mentioned in the titles of a great many acts, but, as said by this court in the case of *Golden Canal Co. v. Bright,* 8 Colo. 144, at page 149,

"This constitutional inhibition must receive a reasonable construction. It is enough if the bill treats of but one *general subject,* and that subject is expressed in the title."

In that case the title to the act under consideration read,

"An act to regulate the use of water for irrigation, and providing for settling the priority of right thereto, and for payment of the expenses thereof, and for payment of all costs and expenses incident to said regulation and use."

It was held that this title contained but one general subject properly expressed in it, which was "to regulate the use of water for irrigation" and that the remainder of the title refers to nothing which is not germane to the subject thus expressed. We think this position is applicable here. The controlling provision of the title to the act in question is, "An Act concerning certain forms of prostitution." The rest of the title refers to nothing which is not germane to the

subject thus expressed. The remainder which reads "and providing punishments for persons encouraging prostitution in violation of this act" is germane to the subject already expressed. The punishments provided are by necessary implication properly included in that portion of the title preceding it; had this latter portion been omitted the punishments could have been properly included in the bill under the first portion of the title. The punishment provided, for a male person over the age of eighteen, who shall feloniously engage and assist in operating or managing a house for the purpose of carrying on prostitution, or for any male or female person, over the age of eighteen, who shall knowingly live on, or be supported in whole or in part, by the money, etc. procured or earned by any female person, through the prostitution of any other female person, would certainly come under the provisions of a title which reads, "An Act concerning certain forms of prostitution" or " An Act concerning prostitution." These matters all concern prostitution or certain forms of prostitution.

In the case of *Clare v. The People,* 9 Colo. 122, the title of the act under consideration read, "An act to facilitate the recovery of ore taken by theft or trespass, to regulate sale and disposition of the same, and for the better protection of mine owners." It was held that this title contained but one general subject clearly expressed, and that the addition of sub-divisions thereof did not necessarily vitiate the whole title.

In *Brown v. Elder,* 32 Colo. 527, this court held that the inheritance tax provisions contained in the general revenue act of 1902, did not embrace separate and distinct subjects from the one expressed in the title of the act, which reads, "An act in relation to public revenue, and repealing all previous acts or parts of acts in conflict therewith." It was further held that this title was sufficiently broad to include all the

provisions concerning the inheritance tax and was not so general as to be misleading.

In *Re Breene,* 14 Colo. at page 405, in commenting upon this section, this court said,

"* * * The general assembly may, within reason, make the title of a bill as comprehensive as it chooses, and thus cover legislation relating to many minor but associated matters. For example, an act entitled 'An act in relation to municipal corporations' may provide for the organization, government, powers, duties, offices and revenues of such corporations, as well as for all other matters pertaining thereto. 'The generality of a title,' says Judge Cooley, 'is therefore no objection to it, so long as it is not made a cover to legislation incongruous in itself, and which by no fair intendment can be considered as having a necessary or proper connection.' "

In the case of *Anderson v. Grand Valley Irrigation District,* 35 Colo. 525, the title attempted to cover all conceivable phases pertaining to procedure involved in irrigation districts; it was held that the first clause in the title "An act to provide for the formation and government of irrigation districts" is broad and comprehensive enough to include all other provisions found in the act, and that the remainder of the title might be entirely disregarded as surplusage. When tested by the rules announced in the foregoing authorities it is clear that there is but one general subject treated in the title of the act under consideration, and that all matters contained in the charges against the defendant are included in and are a part of, the one subject, to-wit, prostitution, which is sufficiently named in the title of the act, and that the charges against this defendant come within the provisions of the act, which, in turn, are likewise covered by the title. The court committed no error in holding that the act was not subject to the constitutional objections urged.

It is next claimed that the court erred in consolidating the cases for trial. It is claimed that the two indictments charged two separate and distinct offenses, which did not arise or grow out of the same transaction, or involve the same crime; that each required separate testimony and separate defenses. Section 1953, Rev. Stat. 1908, reads:

"Whenever there are or shall be several charges against any person or persons for the same act or transaction, or for one or more acts or transactions connected together, or for one or more acts or transactions of the same class of crimes or offenses, which may be properly joined, instead of having several indictments, the whole may be joined in one indictment in separate counts, and if two or more indictments are found in such cases the court may order them consolidated."

While the indictments do not show it upon their faces, the district attorney stated in open court at the time they were consolidated, that the two indictments grew out of the same or connected transactions. We think the record sustains him in this respect. The crimes charged are both for the violation of the same section of the statute. They are for acts and transactions of the same class of crimes and in this case, as disclosed by the record, for acts and transactions connected, done and performed at the same time and place; the facts were intermingled; this brought them within the provisions of this act. The court was justified in ordering their consolidation for the purpose of a trial, and the defendant was in no respect prejudiced thereby.—*Cummins v. The People,* 4 Colo. App. 71; *Bergdahl v. The People,* 27 Colo. 302; *Roland v. The People,* 23 Colo. 283; *Short v. The People,* 27 Colo. 175; *Chestnut v. The People,* 21 Colo. 512.

The third contention pertains to the rejection of testimony. Upon cross-examination the witness Blanche Bennett was asked, in substance, if she had not had a conversation with Pete Ferrone, in the city, at the corner of River and Kelly Streets, at a time about two weeks after the arrest of the defendant Blackie, wherein she said if Blackie had gone on her bond she would not have said anything against him, that he had not treated her right, she had it in for him and that she intended to give him a roughing. These questions were objected to by the district attorney. Counsel for the defendant stated that the purpose for which it was offered was to show the animus of the witness in the prosecution. The objection was sustained upon the ground of immateriality. Subsequently the defendant recalled the witness Pete Ferrone, and asked him as to having had this conversation with the witness Blanche Bennett at the time and place named in the question to her. An objection to this question was also sustained. Later the People recalled their witness, Annie Muldrow, and she was allowed to testify that she had had a conversation with the defendant's witness Winnie Stevens shortly after the arrest of the defendant, at her house. The witness said that Winnie Stevens told her that if Blanche Bennett turned up Blackie to the authorities she would choke her and make her leave town. The witness Blanche. Bennett was the main witness for the state. Without her testimony no conviction could have been sustained. Winnie Stevens was the principal witness upon behalf of the defendant. A defendant has the right to show the animus of the people's witness and their interest and motives, if any such exist, in testifying against him. The jury have the right to know, and should consider, any motives which a witness may have. And if it could have been shown, that the testimony of the witness Bennett was actuated by mo-

tives of revenge against the defendant; that she believed that he had not treated her right; that she had it in for him, and had declared it to be her intention to give him a roughing, the defendant had the right to have this fact placed before the jury.    In Vol. 3 Ency. of Evidence, p. 771, it is said, "Unfriendliness to the party against whom the witness is testifying may be shown on cross-examination and taken into account by the jury."

In overruling the motion for a new trial, the learned trial judge admits technical error in excluding this evidence, but argues that the manner of the witness on the stand, the very bitterness of her words, the manner in which she spoke them, her sarcasm and irony, the tone of her voice and her very demeanor both on and off the stand, in the presence of the jury, told them, as plainly as if expressed in words, of her undying hatred of the man whom she says took her money, leaving her but a pittance to live on.    This may all be true, yet we do not think it sufficient justification for the rejection of competent evidence.    The demeanor and actions of a witness are not embodied in the record, and there might be a difference in the mind of the trial judge and the minds of the jurors as to the effect of such demeanor and actions; the jury being the sole judges of the evidence it is improper for the court to refuse its admission, when competent, because it would be but cumulative to a material fact which, in his opinion, had already been established solely by the actions and demeanor of the witness.    Also, by this ruling, the jury might have been mislead as to the law on this subject and, on account of the rejection of this evidence, assumed that it was immaterial and unnecessary, in weighing the testimony of the witness, to consider any feelings of animosity, bias or prejudice which she might have entertained against the defendant.    The refusal of this

testimony was specially prejudicial against the defendant for the reason, that following its rejection, the state's witness was allowed to answer similar questions to show the friendliness and motives of the defendant's witness, Winnie Stevens, who had testified upon his behalf. From these facts the jury might have inferred that it was proper to consider the friendliness toward the defendant of a witness called upon his behalf, yet immaterial and unnecessary to consider the enmity against him of a witness called upon behalf of the state. For these reasons the rejection of this testimony cannot be held to be harmless error, because the trial judge may have thought that the same facts attempted to be shown were demonstrated by the actions and demeanor of the witness. It would be a dangerous precedent to allow this line of reasoning to be used as an excuse for the rejection of competent evidence in a criminal case, even where the crimes charged are of such a low and degrading nature as those alleged in these indictments.

The fourth complaint is to the giving of instruction No. 6, which reads:

"The court further instructs you that if you believe from the evidence that the defendant was not in fact the manager of such house of prostitution, but that the same was operated, managed and conducted by the witness Winnie Stevens, or by her and the witness Blanche Bennett jointly, and if you should further believe and find from the evidence beyond a reasonable doubt that the defendant in any manner did aid, abet, assist, advise or encourage the said Winnie Stevens or Blanche Bennett, or either, in the management, conduct or operation thereof, such fact and finding would bring him within the purview of the law under said first mentioned indictment; and in passing upon such facts you may take into considera-

tion the acquaintance, association, relations, business and otherwise, then existing between the defendant and the said Winnie Stevens, as the same is shown by the evidence, the taking and accompanying of men to the said house of prostitution, and the purposes thereof, if shown by the evidence, the receipt of money from the inmates thereof, if the same has been shown, together with all other facts and circumstances shown in evidence."

The portion particularly objected to is, as follows:

"* * * if you should further believe and find from the evidence beyond a reasonable doubt that the defendant in any manner did aid, abet, assist, advise or encourage the said Winnie Stevens or Blanche Bennett, or either, in the management, conduct or operation thereof, such fact and finding would bring him within the purview of the law."

The portion of the statute which it is claimed justifies the giving of this portion of this instruction reads, "or who shall engage or assist in operating or managing any rooming house or building for the purpose of carrying on prostitution." It will be observed that the words "aid," "abet," "advise," "encourage," "in the conduct * * thereof" are not contained in the statute. This language usually applies to accessories, and in the sense used in this instruction is broader and goes beyond the provisions of the act. In this act certain agents are made principals by the statute itself. The act points out and makes principal offenders of certain persons, who, ordinarily, would be punishable as accessories to crime with punishments less severe, as this portion of the act reads, the male person to be convicted under its provisions must "engage or assist in operating or managing."

In *Re Consolidation of School Districts*, 23 Colo., in commenting upon the word "management" at page 502, this court said:

"Webster defines the word 'management' to be 'the act or art of managing; the manner of treating, directing, carrying on or using for a purpose; conduct; administration; guidance; control; as, the management of a farm, the management of state affairs.' From this it will be seen that the word is one of comprehensive meaning."

In the case of *McChesney v. Village of Hyde Park*, 37 N. E. (Ill.) 858, it is said:

"* * * Webster defines the word 'operate' as meaning 'to put into or to continue in operation or activity;' 'to work, as to operate a machine.'"

To the same effect is the case of *Nagel v. Mo. Pac. Ry. Co.*, 75 Mo. 653.

In the case of *City of Little Rock v. Parish*, 36 Ark. at page 174, it is said:

"Operation means, 'exertion of power,' 'method of working;' 'process of operating;' 'mode of action.'"

In *Commonwealth v. Johnson*, 22 Atl. (Pa.) at page 704, it is said:

"Ordinarily the term 'manager' means 'one who has the conduct or direction of anything; as the manager of a theater; the manager of a lottery, of a ball,' etc. * * 'Manage' means 'to direct, control, govern, administer, oversee.'"

In *Cameron v. Kenyon-Connell Commercial Co.*, 56 Pac. (Mont.) 358, it is said, "Management usually signifies positive, rather than negative, conduct."

In *Florsheim Bros. Dry-Goods Co. v. Lester*, 29 S. W. Ark.) 34, it is said,

"* * The meaning of the phrase, 'to carry on,' when applied to business, is well settled. In Worcester's Dictionary the definition is: 'to prosecute, to

help forward, to continue; as to carry on business, etc.' "

In *State v. Tolman,* 31 So. (La.), at page 322, it is said,

"* * The constant daily repetition by the same person of the same kind of acts, each act bringing with it a money return, is certainly the carrying on by him of business in that particular line."

In *Abel v. State,* 8 So. (Ala.) 760, it is said:

"* * To 'engage in or carry on business' has been uniformly construed as signifying 'that which occupies the time, attention and labor of men, for the purpose of a livelihood or profit.' "

In the case of *State v. Napier,* 41 S. E. (S. C.) 13, it is held, in substance, that the words, "the carrying on of a business or the plying of a vocation" necessarily involve the idea of successive acts, continuity of habit,—and that the proof of a single act of hiring or soliciting a laborer to be employed beyond the state limits would not, of itself, constitute the offense of carrying on the business of an employment agent.

We see nothing in the context or any part of this act that makes it clearly appear that the words or terms "operating or managing," used in Section 2, were intended to be applied differently from their ordinary terms or legal acceptation, and from the definitions above given, it follows that the instructions should have stated that in order to convict, the evidence must show that the defendant came within the provisions of the statue. To do this it must show that he had control of and conducted or assisted in the management and operation of the affairs of the house in some manner to be responsible for the acts of prostitution committed therein, or he must, at least, have been able to bring about or assist in bringing about such prostitution. But the court told the jury that

although Winnie Stevens had the sole management and control of the house, or that she and Blanche Bennet jointly had such (thereby excluding all ideas of any assistant in the management and conduct of the house,) that if the defendant did, in any manner, aid, abet, assist, advise and encourage either of them, under either circumstances it was their duty to convict. The words "in any manner aid, abet, assist, advise or encourage," are very broad and sufficient to include many people for the doing of many things, and by this instruction it appears to us that the court read into the act the necessary descriptive elements of an accessory which amounted to an enlargement of the scope of the statute by construction.          \

In *City of Denver v. Domedian,* 15 Colo. App. 36, it is said,

"A proper regard for the liberty of the citizen requires, before he can be convicted and punished for an alleged offense, which is not such *per se,* but made so only by statute, that the offense be described with such particularity and certainty that it may be understood by one of reasonable intelligence to be prohibited, without a resort to extreme technical legal rules of construction."

It will be observed that the statute does not attempt to make it a felony for a female person to manage or operate, or assist in the management or operation of a house of prostitution, this offense is only punishable as a misdemeanor, section 1776. Rev. Stat. 1908, hence, a female accessory to a female operator of such an establishment would be punishable for a misdemeanor, but, according to this instruction, a male accessory would be guilty of a felony, while this principal would remain a misdemeanant. The higher offense provided in that portion of the act under discussion is the doing of a certain thing by a male person, to-wit, to act as an employee or

servant in or about any room, house or place of prostitution, or to engage or assist in operating or managing any such place.   Another male person assisting him in the doing of these acts, could unquestionably be prosecuted as an accessory, while the female person associated is guilty only of a misdemeanor.   It appeals to us, although not necessary to determine, that to charge a person as being an accessory to her in the act she was doing would be to limit his punishment to the same crime as hers.   As a general rule an accessory cannot be convicted of a higher offense than the principal.—12 Cyc. 195; 1 McClain on Criminal Law, p. 166.

In the case at bar the defendant is charged as principal for the doing of certain prohibited acts; the instructions should have been limited to such and within the provisions of the act the statute relative to accessories has no application to the facts here, where the acts themselves make the defendant the real and only principal.

Complaint is also made to the giving of Instruction No. 7, it reads,

"That in order to convict the defendant under the second mentioned indictment the following facts must appear from the evidence beyond a reasonable doubt:

1.   That Blanche Bennett was a prostitute and earned or received money by means of or through her prostitution.

2.   That the said Winnie Stevens, either directly or indirectly received, realized or procured such money, or some part thereof, from or through the said Blanche Bennett.

3.   That the defendant Trozzo received or procured such money, or some part thereof, from the said Winnie Stevens, with knowledge that the same was derived through the prostitution of the said

Blanche Bennett, and that he used the same, or some portion thereof, for his own living, maintenance, subsistence, personal expenses or support.

The amount or sum he so received, as well as the purposes for which it was given or for which he received it, are immaterial, if you should find that he used the same, or any part thereof as above set forth."

The giving of this instruction in its present form was prejudicial error. It is broader than, and goes beyond, the provisions of the act. The statute says, any male person over the age of eighteen who shall knowingly live on or be supported in whole or in part by the money or valuable consideration realized, procured or earned by any female person, through the prostitution of any other female person or persons; but the court told the jury they need only find that Blanche Bennett received money through prostitution, that Winnie Stevens either directly or indirectly received, realized or procured such money or some part of it from or through Blanche Bennett, and that the defendant received or procured some part thereof from Stevens with knowledge, etc., and used the same or some portion thereof, for his own living, maintenance, subsistence, personal expenses or support. Under this instruction, to convict, Winnie Stevens was only required to receive such money without any effort on her part, and regardless of any equivalent return, and it need not constitute a consideration as mentioned in the statute. The defendant need only passively receive some part of such money upon a single occasion, and thereafter, regardless of the purpose for which it was given him, if he bought with it an article for his own use, he was guilty of, in part living upon or being supported by the money. This is what the jury must have understood by that portion of the instruction, where it said:

"The amount or sum he so received, as well as the purposes for which it was given or for which he received it, are immaterial, if you should find that he used the same, or any part thereof as above set forth."

This instruction eliminated from the jury the defense that the money given the defendant by Winnie Stevens was received by him in payment of debts, or to redeem jewelry for her. By this instruction the court ignored the words "earned," "procured," "realized," "consideration," "lived upon," and "supported by." The phrase "lived upon" is thus defined by Webster, "To be maintained in life; to acquire a livelihood, to subsist with, on or by, as to live on spoils, those who live by labor." Winnie Stevens testified that she never gave the defendant a dollar for his own use; his testimony was to the same effect. By this instruction the offense was not limited to the acts stated in the statute, but would cover many cases for acts which evidently were not intended to be prohibited by this statute.

Complaint is made to the giving of Instruction No. 9. When segregated from the erroneous instructions complained of and given with proper instructions upon the other subjects, we find nothing wrong with this instruction. It is likewise urged by the Attorney General that the alleged errors in instructions 6 and 7 are cured when considered in connection with the instructions given as a whole. We cannot agree with this position. We find nothing in any of the other instructions to modify, explain or ameliorate the severity of those heretofore discussed.

For the reasons stated the judgment is reversed and the cause remanded for a new trial in harmony with the views herein expressed.

Decision *en banc.*                    *Reversed.*

Mr. JUSTICE WHITE not participating.