The PEOPLE of the State of Colorado, Plaintiff-Appellant,

v.

Pete GANATTA, Defendant-Appellee.

No. 80SA101.

Supreme Court of Colorado, En Banc.

Dec. 14, 1981.

---

Gus Sandstrom, Dist. Atty., Michael Kupecz, Deputy Dist. Atty., Pueblo, for plaintiff-appellant.

No appearance for defendant-appellee.

LEE, Justice.

The defendant, Pete Ganatta, was convicted by jury of pandering, keeping a place of prostitution, pimping, and conspiracy to commit both pimping and pandering, based upon activities at the 85 Club in Pueblo, Colorado.[1] After the guilty verdicts were returned, the court granted the defendant's motion for judgment of acquittal on the pimping and conspiracy to commit pimping charges. The district attorney appealed pursuant to section 16–12–102, C.R.S. 1973 (1978 Repl.Vol. 8). We reverse the district court and reinstate the jury verdict of guilty on pimping and conspiracy to commit pimping.

In May of 1977, Pueblo police officers were investigating alleged prostitution activities occurring at the 85 Club, a nightclub and bar managed by Pete Ganatta. The police enlisted the aid of Tad Puckett, a private citizen, who agreed to act as an informant in the case and to go to the 85 Club. Shortly after entering the bar, the barmaid asked Puckett and undercover police officer Larry Buckallew if they wanted company. The two assented and were approached by two women offering sexual services. The Pueblo police had previously given Tad Puckett currency, the serial numbers of which had been recorded. Puckett then gave Cynthia Goree a $50 bill and a $5 bill to purchase her services. Goree told him to leave the club through the front door and to meet her in a motel located in back of the club. Puckett then observed Goree walk behind the bar counter and talk to the defendant, Pete Ganatta. She appeared to hand him the money which she had received from Puckett. She then left the club through the rear door. Goree and Puckett then met at a motel room and engaged in sexual relations. A few minutes later the police entered the motel room and found Puckett and Goree disrobed. Both were taken into custody and Goree was charged with prostitution; Puckett's arrest was a sham. The police then arrested Pete Ganatta and charged him with pro-

---

1. Pandering, section 18–7–203, C.R.S. 1973;
 Keeping a place of prostitution, section 18–7–204, C.R.S. 1973;

 Pimping, section 18–7–206, C.R.S. 1973;
 Promoting sexual immorality, section 18–7–208, C.R.S. 1973;

moting sexual immorality,[2] pimping, pandering, keeping a place of prostitution, and conspiracy. At the time of his arrest, Ganatta had in his possession the currency that Puckett had given to Goree, as well as several hundred dollars in cash and checks, which he claimed were his "personal money."

At trial on the charges, the prosecution presented evidence that the 85 Club was managed and owned by Pete Ganatta, possibly in partnership with his brother, Frank Ganatta, and that prostitutes had been operating out of the club at Pete Ganatta's direction or with his approval. Ganatta supervised the employment of women as exotic dancers and purportedly shared their profits from prostitution. A former prostitute who had worked at the 85 Club testified that prostitutes at the 85 Club would pay Mr. Ganatta the money they received from their customers for sexual services, usually $52, in return for a key to a room in the motel in back of the nightclub, which he also owned, where they would engage in sex for hire. Later, Ganatta would settle with the women by paying them one-half of the amount given to him, less $2 which was payable to the cocktail waitress as a tip. Testimony corroborating the cost of prostitution was offered by several individuals who had on numerous occasions paid to engage in sexual activities with the prostitutes at the 85 Club. There was testimony that checks written to "cash" in amounts of $52, which were seized from Ganatta at the time of his arrest, had been written by customers to pay prostitutes for their sexual services. In addition, bank records from Pete Ganatta's business account for the 85 Club were introduced into evidence, indicating that large amounts of cash and checks in amounts of $52 or multiples thereof, written to "cash" and endorsed by Mr. Ganatta, had been deposited into his checking account.

At the close of all the evidence on November 5, 1979, the trial judge indicated to

counsel that he intended to grant a judgment of acquittal on the charges of pimping and conspiracy to commit pimping, due to insufficiency of evidence. On the following day, the trial judge again addressed the attorneys but informed them that he had changed his mind and had decided to submit all charges to the jury. These two oral orders were simultaneously signed as minute orders on November 9, 1979. However, on November 7, 1979, the jury returned a verdict of guilty on all charges, including the pimping and conspiracy to commit pimping charges.

After the verdict was entered, the trial judge granted the defendant's motion for judgment of acquittal on the pimping and conspiracy to commit pimping charges on the basis that the jury had impermissibly "[drawn] an inference from an inference" in order to convict. The prosecution appealed the ruling of the trial court pursuant to section 16–12–102, C.R.S. 1973 (1978 Repl. Vol. 8). We reverse the judgment of acquittal and reinstate the jury verdicts.

### I.

Section 16–12–102, C.R.S. 1973 (1978 Repl. Vol. 8), allows the prosecution to appeal questions of law which have precedential value. Since this case involves the legal standard to be applied to evidence of pimping or conspiracy to commit pimping, it merits review under the statute. The language of the pimping statute requires interpretation, although it has been held not to be unconstitutionally vague. *See, People v. Johnson,* 195 Colo. 350, 578 P.2d 226 (1978); *People v. Stage,* 195 Colo. 110, 575 P.2d 423 (1978); and, *People v. Barron,* 195 Colo. 390, 578 P.2d 649 (1978).

### A.

Section 18–7–206, C.R.S. 1973 (1978 Repl. Vol. 8), with which defendant was charged, describes the crime of "pimping" as follows:

"Pimping. Any person who knowingly lives on or is supported or maintained in

---

Conspiracy, section 18–2–201, C.R.S. 1973.

**2.** The promoting sexual immorality charge was later dropped. *See* section 18–7–208, C.R.S. 1973.

whole or in part by money or other thing of value earned, received, procured, or realized by any other person through prostitution commits pimping, which is a class 5 felony."

In *Trozzo v. People*, 51 Colo. 323, 117 P. 150 (1911), this court defined the statutory phrase "lives on" as "to be maintained in life, to acquire a livelihood, to subsist with, on or by." This definition, however, does not answer the question of what degree of proof is necessary to establish that one "lives on" money from prostitution.

The defendant argued in his motion for judgment of acquittal that there was insufficient evidence to convict on the pimping charges. The evidence consisted of money and checks payable to cash that were in Ganatta's possession at the time of his arrest and records of deposits to his business bank account in amounts reflecting the $52 cost of prostitutes' services. Therefore, he argued, the jury was able to convict only after drawing an inference that the funds from prostitution were applied to his support, although there had been no evidence offered to prove how the funds had been spent. The trial judge ultimately determined that the jury had drawn an impermissible inference from an inference and granted the judgment of acquittal. We do not agree with this conclusion.

■ When evidence was offered that Ganatta was an owner and manager of the 85 Club, and that checks payable to "cash," but representing payments for a prostitute's sexual services, were endorsed by him and deposited by him into a business bank account of which he was either sole or part owner, in our opinion, the evidence was sufficient to establish a *prima facie* case that Ganatta lived on or was supported in whole or in part from funds derived from prostitution.

■ Undoubtedly, some of the money deposited into the business account may have been derived from legitimate business activities. Nevertheless, we find no merit in the defendant's assertion that in order to be convicted of pimping a person must be maintained solely or substantially by proceeds from prostitution. Rather, the proper inquiry under the statute is whether the defendant knowingly received funds derived from another's prostitution and applied those funds to his support, maintenance, or "living." [3] We find no necessity to promulgate a technical definition of these terms. Instead, we conclude that where the people's evidence establishes that a person knowingly applies a thing of value received through another's act of prostitution to his own benefit, whether it be a business or personal benefit, a *prima facie* case for proof of the crime of pimping has been made.

California has interpreted similar statutory language in like manner. A California pimping statute provided in part:

"Any male person who, knowing a female person to be a prostitute, shall live or derive support or maintenance, in whole or in part, from the earnings or proceeds of the prostitution of such prostitute, ... shall be guilty of a felony, to wit: pimping." Gen.Laws, Act 1911, as amended in 1921.[4]

This language has been interpreted to mean that if "such earnings are received knowingly and applied to the support of the accused person, under the circumstances mentioned in the statute, he would be guilty of pimping regardless of his wealth, possessions or legitimate income from other sources .... We do not think the act was intended to favor opulent pimps over impecunious ones." *People v. Coronado*, 90 Cal. App.2d 762, 203 P.2d 862 (1949). The scope of proof does not necessitate a showing that the money earned from prostitution was actually spent to provide support and main-

---

**3.** Of course, one who receives money or any other thing of value from a prostitute pursuant to a legitimate business transaction, i.e., in consideration of the sale of merchandise or services, does not come within the proscription of the statute. *See People v. Stage*, 195 Colo. 110, 575 P.2d 423 (1978).

**4.** The current version of this statute appears at section 266h, California Penal Code.

tenance if it may reasonably be inferred that the accused has spent the money or applied it to his benefit. *See People v. Giambone*, 119 Cal.App.2d 338, 259 P.2d 10 (1953); *People v. Kennedy*, 200 Cal.App.2d 814, 19 Cal.Rptr. 683 (1962); and *People v. Courtney*, 176 Cal.App.2d 731, 1 Cal.Rptr. 789 (1959).

Ganatta claimed when arrested that the checks and marked bills seized were his "personal money." This statement, considered with other evidence, effectively refutes his allegation that he did not "live on" the money "in whole or in part." Thus, we do not hold, as the defendant would have us do, that a conviction of this crime could result only from clear evidence that Ganatta had used these specific funds to obtain the "necessities of life."

■ The trial court erred in granting a judgment of acquittal after the jury had returned its guilty verdict. The judge's duty was to view the evidence presented in the light most favorable to the prosecution. *People v. Bennett*, 183 Colo. 125, 515 P.2d 466 (1979). "If the evidence, although conflicting, supports the jury's verdict of guilty, the verdict must be upheld." *People v. Emeson*, 179 Colo. 308, 500 P.2d 368 (1972). Once a *prima facie* case establishing the elements of the charge has been presented, it becomes impregnable against a motion for judgment of acquittal. *People v. Rivas*, 197 Colo. 131, 591 P.2d 83 (1979). The evidence here was sufficient to present a *prima facie* case. The question of witness credibility was properly for the jury. Therefore, we determine that the jury's verdict on the charge of pimping should have been upheld and the motion for judgment of acquittal after the verdict was rendered, denied.

### B.

The defendant was also charged with conspiracy to commit pimping, section 18–2–201, C.R.S. 1973 (1978 Repl.Vol. 8).[5] Conspiracy is a substantive offense, separate from the pimping charge itself, which punishes an agreement intentionally entered into for the purpose of promoting criminal acts. Because of the nature of conspiracy, it often may only be proven by circumstantial evidence of involvement, which gives rise to the inference that an agreement to promote or facilitate the commission of the underlying crime was present. *People v. LeFebre*, 190 Colo. 307, 546 P.2d 952 (1976).

■ A pimping operation necessarily requires the cooperation of prostitutes other than the party charged with pimping, since the value received by the pimp must have resulted from another's prostitution. The "Wharton" rule states generally that one may not be convicted of conspiracy when the principal crime charged is one that must necessarily be committed by two or more persons agreeing among themselves, such as adultery or common-law bribery, and the agreement did not exist between parties other than those committing the underlying crime. *See* 1 *Anderson, Wharton's Criminal Law and Procedure*, § 89, p. 191 (1957) and *People v. Wettengel*, 98 Colo. 193, 58 P.2d 279 (1936). However, "an exception to the 'Wharton' rule permits conspiracy charges to be filed when more or different people participate in the conspiracy than are necessary to commit the substantive offense," and "[t]he 'Wharton' rule shields an agreement from prosecution only if the agreement is necessary to perfect the elements of the substantive crime." *People v. Incerto*, 180 Colo. 366, 505 P.2d 1309 (1973).

■ As above held, the prosecution presented a *prima facie* case of pimping. The remaining question is whether the evidence presented sufficiently set out a conspiracy, separate from the offense of pimping, upon which the jury could convict. Re-

---

**5.** That statute provides in part:

"Conspiracy. (1) A person commits conspiracy to commit a crime if, with the intent to promote or facilitate its commission, he agrees with another person or persons that they, or one or more of them, will engage in conduct which constitutes a crime or an attempt to commit a crime, or he agrees to aid the other person or persons in the planning or commission of a crime or of an attempt to commit such crime."

viewing the evidence in the light most favorable to the prosecution, we find that a *prima facie* case was established.

Evidence was presented of the pervasive involvement of Mr. Ganatta and the other employees of the 85 Club in the operation of the prostitution ring. The jury could reasonably have concluded that the barmaid and bartender were aware that the receipts from prostitution were being deposited into the club "register" and that the barmaid received a $2 tip for each "trick." It is inconceivable that other club employees were not aware of the "tally sheet" of "tricks" kept in the kitchen and the fact that Ganatta would pay employees at the end of each evening for a share of amounts earned through prostitution for the day. The evidence presented was not so incredible that the jury should not have assigned it weight.

In addition, customer witnesses testified that upon request Ganatta would hold their checks until they could present cash; that he would cash checks in $52 or greater amounts so that they could buy the prostitutes' services; and that he allowed them to pay for sex with credit cards payable to the 85 Club. This evidence supports the customers' knowledge of Ganatta's involvement, and is thus circumstantial evidence of the conspiracy.

Considering the evidence as a whole, in our view, the prosecution made an adequate case of conspiracy for the jury's consideration. It follows that the grant of the motion for judgment of acquittal was error and the jury's verdict of guilty of conspiracy to commit pimping should have been upheld.

## II.

The defendant argued in support of his motion for judgment of acquittal that the November 5 statement of the trial judge that he intended to grant a motion for judgment of acquittal was a final judgment and that the charges could not subsequently be submitted to the jury without a violation of the double jeopardy clause of the Fifth Amendment to the United States Constitution. We disagree.

 The record shows that the judge stated on November 5, 1979, that he was planning to grant the motion for judgment of acquittal on the two charges. He made the statement to allow the counsel for defense and prosecution to avoid preparing closing arguments for the jury on those charges. However, his oral order did not become a final judgment pursuant to Crim.P. 32(c) until the order was signed and entered in the judgment record.[6] On November 6, 1979, the judge retracted his prior statement and on redetermination decided that the evidence was sufficient to submit the pimping and conspiracy charges to the jury. This order, as well as the November 5 order, were both signed by the judge as minute orders on November 9, 1979. Since both were entered at the same time, the latter retracting the former, it cannot be said that the November 5 order took precedence. To hold otherwise would discourage trial judges from reconsidering difficult issues once they have announced a preliminary decision. Since the jury had not been discharged, the trial judge acted within his discretion in changing his mind and in submitting the evidence to the jury for its deliberation. Moreover, the jury verdict predated the effective date of the minute orders, removing all doubt as to the disposition of the charge. Therefore, we find that there was no violation of the double jeopardy clause in the trial court's rulings.

6. The language of the rule was amended effective November 13, 1979, approximately one week after the jury's verdict was delivered. At the time of trial, Crim.P. 32(c) read in relevant part:

"(c) Judgment. A judgment of conviction shall consist of a recital of the plea, the verdict or findings, the sentence, and cost if any are awarded against the defendant. If the defendant is found not guilty or for any other reason is entitled to be discharged, judgment shall be entered accordingly. In either event, the judgment shall be signed by the judge and entered by the clerk in the register of actions and as thus entered it shall constitute the final judgment. . . ."

■ It should also be noted that the double jeopardy clause is not violated when a jury's verdict is reinstated after an acquittal has been granted by the judge. A long line of Colorado cases hold that a judgment of acquittal entered at the close of the prosecution's case will foreclose retrial of the defendant, even though the trial court may have erred as a matter of law in granting the judgment of acquittal. *See People v. Paulsen*, 198 Colo. 458, 601 P.2d 634 (1979), and *People v. Quintana*, Colo., 634 P.2d 413 (1981). However, the rule is otherwise when the case has been submitted to the jury and a guilty verdict has been returned, but has been erroneously set aside by the court. In this case, a retrial is not involved since the jury rendered its guilty verdict prior to the entry of the judgment of acquittal. *See United States v. Wilson*, 420 U.S. 332, 95 S.Ct. 1013, 43 L.Ed.2d 232 (1975); *People v. Gennings*, 196 Colo. 208, 583 P.2d 908 (1978); *United States v. Cravero*, 530 F.2d 666 (5th Cir. 1976); *People v. Rivas, supra.*

For the foregoing reasons, we reverse the judgment and remand this case to the district court with instructions to reinstate the jury verdicts of guilty on the charges of pimping and conspiracy to commit pimping.