663 P.2d 616 (1983)
The PEOPLE of the State of Colorado, Petitioner,
v.
The DISTRICT COURT, In and For the SEVENTEENTH JUDICIAL DISTRICT, State of Colorado, and the Honorable Philip F. Roan, one of the Judges thereof, Respondents.
No. 83SA52.
Supreme Court of Colorado, En Banc.
May 2, 1983.
Rehearing Denied May 31, 1983.
*617 Paul Q. Beacom, Dist. Atty., Steven L. Bernard, Chief Trial Deputy, Brighton, for petitioner.
David F. Vela, Colo. State Public Defender, Linda Hotes, Deputy State Public Defender, Denver, for respondents.
QUINN, Justice.
The People in this original proceeding seek an order directing the respondent court to reinstate the charge of sexual assault in the first degree against Lawrence Winston Conley, a defendant in an upcoming trial pending in the respondent court. Conley had been found guilty of this offense in a jury trial, but the respondent court granted his motion for a new trial and thereafter dismissed the charge of sexual assault in the first degree. In dismissing the charge the court was of the opinion that notwithstanding its immediate reversal of a midtrial ruling erroneously granting Conley's motion for a judgment of acquittal on this charge, the constitutional guarantee against twice placing a defendant in jeopardy for the same offense, U.S. Const. Amends. V and XIV; Colo. Const. Art. II, Sec. 18, prohibited the court from correcting its own error during the trial and submitting this charge to the jury. Hence, the court reasoned, a retrial on this charge also was barred under double jeopardy principles. We issued a rule directing the respondent court to show cause why the charge of sexual assault in the first degree should not be reinstated, and we now make the rule absolute.

I.
Conley was charged in the Adams County District Court in a three-count information with sexual assault in the first degree,[1] first *618 degree burglary,[2] and the commission of a crime of violence,[3] all of which were allegedly committed on October 18, 1981. Trial to a jury commenced on April 27, 1982. On the following day, at the conclusion of the prosecution's case, Conley moved for a judgment of acquittal. The court granted the motion as to the greater inclusive offenses of sexual assault in the first degree and first degree burglary, as well as to the crime of violence charge.[4] It ruled, however, that it would submit the lesser included offenses of sexual assault in the second degree and second degree burglary to the jury. The court then recessed for the day with the trial to be resumed on the next day at 10:00 a.m. As the parties prepared to resume the trial on the following morning, the court orally ruled that it had made a mistake in granting the defendant's motion for a judgment of acquittal on the charge of sexual assault in the first degree. The court stated that it labored under the misapprehension that the use of a deadly weapon was a necessary element of sexual assault in the first degree, when in fact the use of a deadly weapon served only to enhance the crime from a class 3 to a class 2 felony.[5] Conley objected to the court's corrected ruling but to no avail. Instructions were then prepared and the case was submitted to the jury on the charges of sexual assault in the first degree and second degree burglary. The jury retired to deliberate in the afternoon of April 29 and returned guilty verdicts later in the day.
Conley thereafter filed a motion for new trial on several grounds. Prior to ruling on the motion the court entered a written order reflecting its rulings during the trial.[6] The court on November 8, 1982, granted Conley's motion for a new trial because of cumulative error and set the new trial for January 17, 1983.
*619 Before the commencement of the new trial Conley moved to dismiss the charge of sexual assault in the first degree. He argued that the judgment of acquittal entered during the first trial was a final judgment which, under double jeopardy principles of the United States and Colorado Constitutions, U.S. Const. Amends. V and XIV; Colo. Const. Art. II, Sec. 18, could not be set aside even prior to the termination of the trial itself so as to permit the jury to consider the charge on which the erroneous acquittal had been entered. The trial court agreed with Conley and dismissed the first degree sexual assault charge. Commencement of the new trial was then stayed pending resolution of this original proceeding.

II.
The Fifth Amendment to the United States Constitution and Article II, Section 18 of the Colorado Constitution protect an accused from being placed in jeopardy twice for the same offense. It is the threat of multiple trials for the same crime that the Double Jeopardy Clause primarily seeks to eliminate. As the United States Supreme Court succinctly observed in United States v. Martin Linen Supply Company, 430 U.S. 564, 569, 97 S.Ct. 1349, 1353, 51 L.Ed.2d 642, 649-50 (1977):
"At the heart of this policy is the concern that permitting the sovereign freely to subject the citizen to a second trial for the same offense would arm Government with a potent instrument of oppression. The Clause, therefore, guarantees that the State shall not be permitted to make repeated attempts to convict the accused, `thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.' Green v. United States, 355 U.S. 184, 187-188 [78 S.Ct. 221, 223, 2 L.Ed.2d 199, 204] (1957); see also Downum v. United States, 372 U.S. 734, 736 [83 S.Ct. 1033, 1034, 10 L.Ed.2d 100, 102-103] (1963). `[S]ociety's awareness of the heavy personal strain which a criminal trial represents for the individual defendant is manifested in the willingness to limit the Government to a single criminal proceeding to vindicate its very vital interest in enforcement of criminal laws.' United States v. Jorn, 400 U.S. 470, 479 [91 S.Ct. 547, 554, 27 L.Ed.2d 543, 553] (1971) (Harlan, J.)."
See, e.g., Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981); United States v. Scott, 437 U.S. 82, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978); Burks v. United States, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978); United States v. Wilson, 420 U.S. 332, 95 S.Ct. 1013, 43 L.Ed.2d 232 (1975). This policy against multiple trials also safeguards the defendant's weighty interest in "having his fate determined by the jury first impaneled." Illinois v. Somerville, 410 U.S. 458, 471, 93 S.Ct. 1066, 1073, 35 L.Ed.2d 425, 435 (1973); accord United States v. Jorn, 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971).
Under federal constitutional standards a retrial is not barred under the Double Jeopardy Clause when the trial court erroneously dismisses a criminal charge on grounds unrelated to factual guilt or innocence, although the dismissal occurs after jeopardy has already attached. United States v. Scott, supra. We, however, have taken a more expansive approach to the Colorado Double Jeopardy Clause. For example, in People v. Paulsen, 198 Colo. 458, 601 P.2d 634 (1979), we held that the erroneous grant of a judgment of acquittal on grounds unrelated to factual guilt or innocence precludes a retrial of the defendant "even when the trial court erred as a matter of law in granting the judgment of acquittal." Id. at 460, 601 P.2d at 636. We reaffirmed Paulsen in People v. Quintana, 634 P.2d 413 (Colo.1981), where we held that the trial court's erroneous midtrial dismissal of two habitual criminal counts, after a jury verdict of guilty had been returned on the substantive crime of second degree burglary, precluded a retrial of the defendant on the habitual criminal charges. We there stated:

*620 "Paulsen makes clear that the precise character of the trial court's judgment whether an improper judgment of dismissal on grounds unrelated to factual guilt or innocence or an acquittal based on an erroneous application of evidentiary standardsis not determinative of the retrial bar under the Colorado Double Jeopardy Clause. Nor is the court's characterization of its action as a dismissal, a directed verdict or an acquittal significant to the double jeopardy issue.... A retrial on a criminal accusation is prohibited whenever the first trial results in a final judgment favorable to the defendant. To permit a retrial under such circumstances would expose the defendant to that very same risk of repeated prosecutions which the Double Jeopardy Clause was designed to prevent." Id. at 420.
In both Paulsen and Quintana the erroneous rulings terminated the trial then in progress, with the consequence that any retrial necessarily would have subjected the defendant to a multiple prosecution for the same offense which the trial court had erroneously resolved in his favor. The Colorado Double Jeopardy Clause interposes itself against this very risk of retrial whenever the court, subsequent to the attachment of jeopardy, renders a final judgment that concludes, albeit erroneously, the criminal trial in favor of the defendant.
In People v. Ganatta, 638 P.2d 268 (Colo.1981), we addressed the question whether double jeopardy principles prohibit a trial judge from correcting an erroneous midtrial ruling on a defendant's motion for a judgment of acquittal under circumstances similar to those present here. The trial judge in Ganatta, at the close of all the evidence, announced that he intended to enter a judgment of acquittal on the charges of pimping and conspiracy to commit pimping. The trial was then continued to the following morning, at which time the judge informed counsel that he had changed his mind and would submit the charges to the jury. The jury returned guilty verdicts to both charges. Two days later the court signed two orders, one indicating the court's initial ruling on the acquittal motion and the other noting the court's retraction of its prior ruling. We rejected the defendant's argument that double jeopardy principles prohibited the submission of the charges to the jury after the trial judge expressed his intent to enter a judgment of acquittal on these same charges:
"To hold otherwise would discourage trial judges from reconsidering difficult issues once they have announced a preliminary decision. Since the jury had not been discharged, the trial judge acted within his discretion in changing his mind and in submitting the evidence to the jury for its deliberation. Moreover, the jury verdict predated the effective date of the minute orders, removing all doubt as to the disposition of the charge. Therefore, we find that there was no violation of the double jeopardy clause in the trial court's rulings." Id. at 273.[7]
*621 III.
It is quite obvious that the respondent court's mid-trial correction of its erroneous ruling on a motion for a judgment of acquittal did not impair the primary interest which the Double Jeopardy Clause seeks to accommodatethe elimination of the threat of multiple trials for the same offense. Since the court's erroneous judgment of acquittal went only to the greater inclusive charges of sexual assault in the first degree and first degree burglary, the court's midtrial correction of its prior error had no effect whatever on the continuation of the trial. The corrective ruling, in other words, did not result in any additional governmental attempt to convict Conley before a different jury or undermine in the least Conley's interest in having his trial completed by the particular jury impaneled and sworn to resolve the controversy. And finally, there is no indication that the court's erroneous ruling detrimentally affected Conley's defense to the charges. An accused under these circumstances has no "legitimate claim to benefit from an error of law when that error could be corrected without subjecting him to a second trial before a second trier of fact." United States v. Wilson, supra, 420 U.S. at 345, 95 S.Ct. at 1023, 43 L.Ed.2d at 242-43; accord, e.g., United States v. Rose, 429 U.S. 5, 97 S.Ct. 26, 50 L.Ed.2d 5 (1976); United States v. Morrison, 429 U.S. 1, 97 S.Ct. 24, 50 L.Ed.2d 1 (1976). Keeping in mind the basic interest served by the constitutional guarantee against double jeopardy, we see no reason why the double jeopardy prohibition should preclude a trial judge from correcting during the trial itself an erroneous ruling on a motion for a judgment of acquittal when no threat of retrial would arise from the correction and the accused has suffered no demonstrable prejudice by reason of the correction.
The rule to show cause is made absolute and the respondent court is directed to reinstate the charge of sexual assault in the first degree against Lawrence Winston Conley.
NOTES
[1] Section 18-3-402(1)(a) and (2)(c), C.R.S.1973 (1978 Repl.Vol. 8), provides as follows:

"(1) Any actor who knowingly inflicts sexual penetration on a victim commits a sexual assault in the first degree if:
(a) The actor causes submission of the victim through the actual application of physical force or physical violence;
* * * * * *
"(2) Sexual assault in the first degree is a class 3 felony, but it is a class 2 felony if:
* * * * * *
(c) The actor is armed with a deadly weapon and uses the deadly weapon to cause submission of the victim."
[2] Section 18-4-202, C.R.S.1973 (1978 Repl.Vol. 8), provides in pertinent part:

"(1) A person commits first degree burglary if he knowingly enters or remains unlawfully in a building or occupied structure with the intent to commit therein a crime, other than trespass as defined in this article, against a person or property, and if in effecting entry or while in the building or occupied structure or in immediate flight therefrom, he or another participant in the crime assaults or menaces any person, or he or another participant is armed with explosives or a deadly weapon.
"(2) First degree burglary is a class 3 felony."
[3] Section 16-11-309(2)(a)(I), C.R.S.1973 (1982 Supp.), defines a crime of violence to include a crime in which the defendant used a deadly weapon in the commission of sexual assault.
[4] In granting the defendant's motion for a judgment of acquittal the court orally ruled as follows:

"The Court is not going to permit this matter to go to the jury on the charge of sexual assault in the first degree; however, sexual assault in the second degree is a lesser-included offense. The Court will permit that. The Court does not believe that the jury could find reasonably that there was a knife used in this particular incident. The same as to first degree burglary. Second degree burglary is a lesser-included offense. The Court will permit this matter to go to the jury on second degree burglary."
[5] The court, in reversing its prior ruling, noted:

"It was the Court's impression that the Defendant being armed with a deadly weapon and the weapon being used to cause the submission of a victim was a necessary part of that [crime]. It is not. It can go to the jury on the basis, which is supported by some evidence, that an actor who knowingly inflicted sexual penetration on a victim committed a sexual assault in the first degree if the actor caused submission of the victim through the actual application of physical force or physical violence.
"So I'll permit it to be submitted to the jury on that basis. The second count will be second degree burglary as I stated last night, and the third count [crime of violence] has been taken from the jury."
[6] This order, entitled "Order After Jury Trial," was dated May 12, 1982, nunc pro tunc April 29, 1982, and summarized the court's ruling on April 28, 1982, which granted the defendant's motion for a judgment of acquittal as to sexual assault in the first degree, as well as the order entered the next day reversing the prior ruling.
[7] The respondent attempts to distinguish our holding in Ganatta in two respects. First, the respondent asserts that in Ganatta the trial judge merely indicated an intention to grant a judgment of acquittal, but ultimately decided to submit the matter to the jury. Our decision, however, proceeded on the assumption that what the trial judge did was the equivalent of granting the defendant's motion and then reversing this ruling the very next day. Were this not the case, then there would have been no need whatever to discuss the double jeopardy issue at all. The respondent next attempts to distinguish Ganatta on the basis that the then existing Crim.P. 32(c) required that a judgment be signed by the judge and entered by the clerk in the register of actions and "as thus entered it shall constitute the final judgment." The present Crim.P. 32(c), which became effective November 13, 1979, contains the same signature and register-entry requirements, but, as the respondent points out, has eliminated the statement that the judgment so entered "shall constitute the final judgment." Thus, the respondent argues, the judgment of acquittal in Ganatta was not a final judgment under the applicable Crim.P. 32(c), while the judgment in this case satisfies the conditions for finality. We reject this purported distinction. Neither the former nor the present version of Crim.P. 32(c) provides a standard of "finality" for purposes of the constitutional prohibition against being twice placed in jeopardy for the same offense. We therefore decline the respondent's invitation to limit Ganatta to its own peculiar facts.