The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Timothy VIALPANDO,
Defendant–Appellant.

No. 88CA1147.

Colorado Court of Appeals,
Div. I.

Dec. 6, 1990.*

Rehearing Denied Jan. 10, 1991.

Certiorari Granted May 13, 1991.

Cross-Petition for Certiorari Denied
May 13, 1991.

* Prior Opinion announced August 16, 1990 was   Withdrawn. Petitions for Rehearing Granted.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., John J. Krause, Asst. Atty. Gen., Denver, for plaintiff-appellee.

David F. Vela, Colorado State Public Defender, Terri L. Brake, Chief Deputy Public Defender, Denver, for defendant-appellant.

Opinion by Judge PIERCE.

Defendant, Timothy Vialpando, appeals a judgment of conviction entered on a jury verdict finding him guilty of first degree murder, robbery, escape, possession of contraband, and being an habitual criminal. We reverse and remand for a new trial.

This was a highly publicized death penalty prosecution involving the killing of a sheriff's deputy who was assigned to guard against defendant's escape from a hospital. Defendant had been brought to the hospital from the county jail for treatment of several self-inflicted stab wounds. At the hospital, defendant was able to cut through his shackles with a hacksaw blade he had hidden in his shorts. When the deputy entered defendant's hospital room, the two men became embroiled in a fight, during which the door to the room closed. Witnesses heard two shots fired and saw defendant emerge from the room with the deputy's gun. The deputy had been fatally shot. Defendant fled but was captured a few minutes later.

Defendant contends that the cumulative effect of the irregularities of his trial combined with a bias on the part of the trial judge prevented him from receiving a fair trial. We agree.

Under both the Sixth Amendment and Colo. Const. art. II, § 16, defendant is constitutionally guaranteed a right to a fair trial by an impartial court. *People v. Benney,* 757 P.2d 1078 (Colo.App.1987). And, reversal is mandated if numerous formal irregularities, each of which in itself might be deemed harmless, in the aggregate show the absence of a fair trial. *People v. Roy,* 723 P.2d 1345 (Colo.1986).

## I.

■ Here, despite the extensive publicity surrounding this proceeding, the trial court refused requests by both the prosecution and the defense for the jury to be sequestered, a matter within its discretion. Crim.P. 24(f). It also denied defendant's requests for an admonitory instruction conforming with *COLJI–Crim.* No. 1:04 (1983) to be given at the commencement of trial as well as prior to each recess. *See* Crim.P. 24(f).

### A.

If a jury is not sequestered, an admonitory instruction serves to ensure that the jurors remain impartial and free from outside influences by impressing upon them their duty to decide the guilt issue solely on the evidence presented in court. *See* 2 ABA, *Standards for Criminal Justice,* Standard 8–3.6 (1986 Supp.) (commentary).

Despite the length of the trial, approximately four weeks, and the extent of the publicity associated with it, the trial court gave only one admonitory instruction during the entire course of the trial. That was immediately after the jury was finally impaneled. At the request of defense counsel, the court so instructed the newly sworn jury immediately prior to the first recess and before opening statements were made.

The guilt phase of the trial alone lasted approximately two weeks, and yet no admonitory instructions were given prior to any other recess.

Furthermore, that single instruction given by the court directed the jurors not to read, listen to, or view any publicity on the case, and not to discuss the case with anyone. However, despite defense counsel's requests and contrary to the mandate of *COLJI–Crim.* No. 1:04 (1983), the jurors were at no time instructed to report to the court if they inadvertently overheard a discussion of the case.

Instead, the judge threatened the jurors during *voir dire* with having to pay for the

cost of the trial if they violated his orders concerning publicity. When it appeared, during the course of the trial, that one juror had violated the court's instruction not to discuss the case by giving a public speech which, at a minimum, referred to his role as a juror in the trial, the trial court refused to allow defense counsel to inquire as to the extent of the alleged impropriety.

In light of the circumstances surrounding the trial, we conclude that the trial court's failure to sequester the jury or its failure to give the complete admonitory instruction when requested, and its refusal to allow any inquiry with regard to the jurors' exposure to out-of-court information, was an abuse of discretion. Further, under the circumstances of this case, this error, combined with others, requires reversal.

### B.

██ The trial court also refused defendant's request for introductory instructions of the type set out in *COLJI–Crim.* Nos. 1:03 and 1:05 (1983). Such instructions are to be given to the jurors at the commencement of the trial concerning trial procedure, the jury's role and duties, and the effect of evidentiary rulings. Consequently, the jurors were not told prior to the presentation of evidence that the prosecution bore the burden of proving defendant's guilt beyond a reasonable doubt and that defendant need not present any evidence in his defense. In addition, the jurors were not informed of the purpose of evidentiary objections and that the attorneys were obligated to make objections to offered evidence they believed to be inadmissible, or that the jurors were required to follow the trial court's rulings on objections and obey any cautionary instructions.

It is the obligation of the trial court to instruct the jury properly on the issues involved and general principles of law. *People v. Hardin,* 199 Colo. 229, 607 P.2d 1291 (1980); *People v. Woods,* 179 Colo. 441, 501 P.2d 117 (Colo.1972). Under the totality of the circumstances here, the refusal to give the introductory instructions, when requested, was another error which,

when added to the others, mandates reversal.

### II.

██ Another safeguard protecting a criminal defendant's right to a fair trial is that the trial judge must be free of any bias, prejudice, or interest directed toward any party or witness, and must avoid making rude comments or entering into discussions evidencing irritation in the presence of the jury. *People v. Drake,* 748 P.2d 1237 (Colo.1988). We conclude that this protection was not provided by the trial judge in this case.

The defendant has complained about 53 separate incidents which occurred during this trial to illustrate his contention that the trial judge made improper comments or actions. Not all of these alleged infractions are legitimate criticisms of the actions of the court, but a significant number of them are.

The record shows that, throughout the trial, the judge demonstrated an attitude of prejudice against the defense. The judge made numerous statements during trial, evidencing his irritation and intolerance of defense questioning. These included statements in the presence of the jury which called into question the defense's trial tactics, as well as several unnecessary comments and other disruptive remarks. A few such statements might be made in the heat of a trial of this length and magnitude without prejudice being evident, but the number and tone of the infractions here constitute error.

An example of the judge revealing a pro-prosecution bias to the jury occurred at the conclusion of the prosecutor's re-direct examination of a witness:

[Prosecutor]: [to the witness] Thank you very much, Ma'am.

[The Court]: You can go. Thank you Ma'am. Very well done, Mr. [Prosecutor].

The record reveals other instances in which the court seriously curtailed the defendant's right to object to testimony or argument. The court interrupted defense counsel on numerous occasions during voir

dire without an objection by the prosecution and in instances where defense counsel's questioning does not appear in any way to be improper. On one occasion, when defense counsel sought to determine whether a juror believed that the death penalty was appropriate if someone acted after deliberation, the court, without any objection from the prosecution, accused counsel of attempting "to trap these people into an answer." In another instance, after the prosecution had made an inaccurate and incomplete statement of the law, defense counsel objected but was told to "sit down ... you can correct that when you get up."

The court refused to allow defense counsel to object during the prosecution's final argument, instructing her that she must write out her objections to be acted upon at a later time. Later, when the prosecution objected, defense counsel asked that the same rules apply to the prosecution. The judge gave no answer, but directed defense counsel to continue her argument.

Another example of the judge's improper treatment of defense counsel in the presence of the jury is seen in the following colloquy that occurred just after the prosecutor posed a question to a witness:

[Defense Counsel]: Objection, your Honor.

[Answer by the witness]: Yes.

[Prosecutor]: Thank you.

[The Court]: Anything else?

[Defense Counsel]: Is that overruled or sustained?

[The Court]: It's neither, Ms. [Defense Counsel].

One of the principal functions of an appellate court is to establish safeguards to prevent unfair trials. This was not a fair trial. The cumulative effect of the above irregularities in the trial procedure, together with the trial court's patent partiality, precluded the proper administration of justice in this instance.

Although the evidence of defendant's guilt could well be considered overwhelming, these irregularities in the judge's demeanor are an additional reason mandating reversal in this case, and make it advisable for us to order that retrial be before a different judge so that these types of incidents are not likely to recur.

Under our concepts of due process, a criminal trial must be fairly conducted for all defendants, the guilty as well as the innocent. As stated in *Oaks v. People*, 150 Colo. 64, 371 P.2d 443 (1962):

"The right to a fair trial does not depend on the degree of culpability disclosed by the evidence.

. . . .

"The guilt of the accused in no way lessens our duty to see that due process is afforded him in the course of his prosecution."

### III.

■ Because it will be necessary to retry this case, we comment on other issues which may also occur upon retrial. There being a possibility that defendant could be convicted of second degree murder on retrial, defendant seeks dismissal of three habitual criminal counts, contending that the underlying convictions are constitutionally infirm. We disagree.

The convictions upon which the prosecution relies to prove habitual criminal status are a 1973 rape conviction, a 1977 conviction for assault, and a 1978 escape conviction which occurred in the state of New Mexico. The 1973 and 1977 convictions were the basis for adjudicating defendant an habitual criminal pursuant to § 16-13-101(1), C.R.S. (1986 Repl.Vol. 8A) following a conviction for a 1986 rape. This conviction and the adjudication of defendant as an habitual criminal was upheld by this court in *People v. Vialpando*, 804 P.2d 219 (Colo.App.1990).

Defendant now seeks to challenge the possible imposition of habitual criminal status pursuant to § 16-13-101(2), C.R.S. (1986 Repl.Vol. 8A). The bases upon which he challenges the validity of the 1973 and 1977 pleas are identical to those asserted and rejected in his previous appeal. He also contends that the advisement given him when he entered his 1978 guilty plea was constitutionally deficient.

## A.

The defendant's motion to dismiss the habitual criminal charges as to counts based on the 1973 and 1977 convictions are denied. This issue has already been resolved in the prior proceedings against defendant, *see People v. Vialpando, supra,* and thus, relitigation of such issue is barred by the doctrine of collateral estoppel.

## B.

 Defendant also contends that his 1978 guilty plea to escape in New Mexico cannot properly be used to support an habitual criminal count here because it was based on an inadequate, constitutionally deficient advisement.

Since a prior conviction obtained in violation of an accused's constitutional rights cannot be used in subsequent proceedings to enhance punishment, the record must affirmatively establish that the plea was voluntarily and understandably made. Specifically, it must show defendant's understanding of the critical elements of the crime to which the plea is tendered. *People v. Drake,* 785 P.2d 1257 (Colo.1990).

Here, the record established that defendant signed a plea and disposition agreement after he had reviewed it with his attorney. It also establishes that he had full knowledge of the possible penalties, and his admissions in open court further establish his full understanding.

In New Mexico, escape "consists of any person who shall have been lawfully committed to any jail escaping ... from such jail." Section 30–22–8, N.M.S.A. (1989) (§ 40–8–22, N.M.S.A. (1953 Comp., as amended)). If, as here, the charge itself is understandable to a person of ordinary intelligence, the reading of the charge or information provides an adequate basis in the record to support the trial court's determination that defendant understood the nature of the charge. *People v. Drake, supra.*

Thus, defendant has failed to make a *prima facie* showing that his plea was not understandably made. *Watkins v. People,* 655 P.2d 834 (Colo.1982).

## IV.

 Because defendant was sentenced to life imprisonment rather than death following this trial, the State cannot again seek the death penalty on remand. *Bullington v. Missouri,* 451 U.S. 430, 101 S.Ct. 1852, 68 L.Ed.2d 270 (1981); *People v. Saathoff,* 790 P.2d 804 (Colo.1990). Given this disposition, we need not address defendant's remaining contentions.

The judgment is reversed, and the cause is remanded for a new trial before a different judge on the crimes charged.

CRISWELL and NEY, JJ., concur.