2013 COA 130

The PEOPLE of the State of Colorado,
Plaintiff–Appellee and Cross–
Appellant,

v.

Reginald Marcus PORTER, Defendant–
Appellant and Cross–Appellee.

Court of Appeals No. 11CA0459

Colorado Court of Appeals,
Div. II.

Announced September 12, 2013

Gilpin County District Court No. 02CR42, Honorable Jack W. Berryhill, Judge

John W. Suthers, Attorney General, Christine C. Brady, Senior Assistant Attorney General, Denver, Colorado; Peter A. Weir, District Attorney, Donna Skinner Reed, Chief Appellate Deputy District Attorney, Golden, Colorado, for Plaintiff–Appellee and Cross–Appellant.

Nora V. Kelly, P.C., Nora V. Kelly, Denver, Colorado, for Defendant–Appellant and Cross–Appellee.

Opinion by JUDGE MÁRQUEZ *

¶ 1 Defendant, Reginald Marcus Porter, appeals the judgment of conviction entered following a bench trial in which the court found him guilty of first degree burglary, aggravated robbery, vehicular eluding, and attempted sexual assault. The prosecution cross-appeals the trial court's dismissal of Porter's habitual criminal counts. We affirm Porter's conviction and disapprove of the trial court's dismissal of the habitual criminal counts.

¶ 2 In 2002, Porter robbed and attempted to sexually assault a female casino employee, and then attempted to escape capture in a police chase. Based on these incidents, the prosecution charged Porter with aggravated motor vehicle theft, first degree burglary, aggravated robbery, attempted sexual assault, vehicular eluding, and third degree assault. The prosecution later amended the charges to include habitual criminal counts. Porter pleaded not guilty by reason of insanity (NGRI).

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2012.

¶ 3 In a 2004 jury trial, Porter was convicted of all charges. However, on appeal, a division of this court reversed his conviction and remanded for a new trial because the trial court had erroneously denied Porter's challenge for cause as to a juror. *People v. Porter*, 2007 WL 4125879 (Colo.App. No. 04CA1755, Nov. 21, 2007) (not published pursuant to C.A.R. 35(f)).

¶ 4 On retrial, Porter waived his right to a jury trial, and again asserted a NGRI defense. The trial court rejected this defense and found him guilty of most of the substantive charges.[1] Porter subsequently moved to dismiss his habitual criminal counts. Following an evidentiary hearing on Porter's motion to dismiss, the court dismissed the habitual criminal counts. The trial court then sentenced Porter to concurrent sentences totaling ten years on the first degree burglary, aggravated robbery, and vehicular eluding convictions, and a consecutive indeterminate sentence of ten years to life on the attempted sexual assault conviction.

## I. Porter's Appeal

¶ 5 Porter contends that the prosecution failed to present sufficient evidence to prove beyond a reasonable doubt that he was sane at the time of the offenses, and the trial court erred in finding him guilty. We disagree.

### A. Standard of Review

¶ 6 We review a sufficiency of the evidence challenge de novo. *Clark v. People*, 232 P.3d 1287, 1291 (Colo.2010). In doing so, we must determine whether the evidence, viewed as a whole and in the light most favorable to the prosecution, was sufficient to prove the charges beyond a reasonable doubt. *Id.*

### B. Analysis

¶ 7 In criminal proceedings, every person is initially presumed to be sane. § 16–8–105.5(2), C.R.S.2012. To establish some evidence of insanity, a defendant must put forth evidence that he or she was someone who (1) was so diseased or defective in mind at the time of the commission of the act as to be incapable of distinguishing right from wrong with respect to that act, or (2) suffered from a condition of mind caused by mental disease or defect that prevented him or her from forming the culpable mental state that is an essential element of the crime charged. § 16–8–101.5(1)(a)–(b), C.R.S.2012. Notably, a mental disease or defect does not include mental conditions "attributable to the voluntary ingestion of alcohol or any other psychoactive substance" or "an abnormality manifested only by repeated criminal or otherwise antisocial conduct." § 16–8–101.5(2)(b), C.R.S.2012.

¶ 8 Once a defendant introduces some evidence of insanity, the prosecution bears the burden of proving the defendant's sanity beyond a reasonable doubt. § 16–8–105.5(2). A directed verdict should be granted to the defendant if the prosecution fails to put on any evidence of the defendant's sanity. *People v. Kernanen*, 178 Colo. 234, 240, 497 P.2d 8, 12 (1972). However, when evidence of sanity is in dispute, the fact finder must resolve the conflict, and weigh all relevant evidence to determine whether the defendant was legally insane at the time of the act. *People v. Wright*, 648 P.2d 665, 667 (Colo. 1982).

¶ 9 Here, according to the prosecution's evidence, Porter drove to a casino and entered the loading dock area. There, he pretended to be delivering an envelope to gain access to a back office. As the female employee inside opened the office door, Porter entered and put the woman in a headlock. He forced the woman to the floor and told her not to make any noise or he would "stick" her. After going through the woman's purse, Porter grabbed the woman by the throat, picked her up from the ground, and told her they were "going to do it." Porter then grabbed at the woman's blouse, ripping it, and told her to get on the floor.

¶ 10 The woman took refuge under her desk. Porter then turned off the lights, pulled down his pants and underwear, sat down on a chair, and scooted towards the desk. The woman pushed him back with her legs and screamed. Porter then took the

---

1. The court had previously dismissed the third degree assault charge. And the court found Porter not guilty on the aggravated motor vehicle theft charge.

woman's leather coat, bag, and ring, and slowly left the room. After a chase ending with a car crash, police officers apprehended Porter with the woman's stolen items.

¶ 11 At trial, the defense presented the medical opinion of a psychiatrist who examined Porter before his first trial. Because the psychiatrist had died prior to Porter's second trial, a transcript of the psychiatrist's original testimony was presented on retrial. The psychiatrist stated that he believed Porter suffered from bipolar disorder and that Porter's "bizarre" behavior—namely his behavior in the room with the victim, waiting outside the casino office for about a minute before leaving, and initially stopping when a state trooper pulled him over but then fleeing—was not consistent with the behavior of "the standard normal criminal." He admitted that not all those who have bipolar disorder are legally insane. However, he concluded that Porter met the statutory criteria for being legally insane.

¶ 12 In response, the prosecution presented two psychologists as expert witnesses. Based on his interactions with Porter and a review of Porter's mental health records, the first psychologist opined that Porter was malingering, and diagnosed him with dysthymic disorder, cocaine dependency, and antisocial personality disorder. He opined that these conditions did not prevent Porter from distinguishing right from wrong. The second psychologist opined that Porter's behavior during the offenses was likely drug-induced, rather than the result of a mental illness. She reasoned that previous crimes, which were committed under the influence of cocaine, largely mirrored his behavior during the commission of Porter's present offenses.

¶ 13 As trier of fact, it was the trial court's province to resolve the conflict between the competing expert opinions, and it was free to accept or reject all or part of any expert's testimony. See id. at 668 ("Where expert testimony is in conflict, the resolution of the conflict and the weight to be given to the testimony is solely the province of the trier of fact."); People v. Rivera, 56 P.3d 1155, 1164 (Colo.App.2002) (irrespective of an expert's opinion, the fact finder retains its authority to determine the facts from the evidence and accept or reject such opinions).

¶ 14 Furthermore, there is record support for the trial court's finding that Porter's behavior was driven in part by drugs and in part by his antisocial nature. An emergency room doctor testified that Porter had recently used cocaine, but was not under the direct effect of cocaine at the time he treated Porter. And all three experts agreed that Porter fit the criteria for antisocial personality disorder. Thus, the record supports a finding that Porter was not insane. See § 16–8–101.5(2)(b) (excluding conditions resulting from voluntary intoxication or antisocial conduct from the definition of legal insanity).

¶ 15 Consequently, viewing the evidence as a whole and in the light most favorable to the prosecution, we conclude that the prosecution presented sufficient evidence for the trial court to find beyond a reasonable doubt that Porter was sane during the commission of his crimes. Clark, 232 P.3d at 1291.

¶ 16 We are not persuaded otherwise by Porter's assertion that, because the prosecution relied on the opinions of two psychologists, it did not effectively rebut his psychiatrist's medical opinion. The trial court was not bound by the psychiatrist's medical opinion. See Rivera, 56 P.3d at 1164. And, notwithstanding his assertions, Porter has not cited, nor have we found, any authority requiring expert testimony to be rebutted by experts with identical qualifications.

¶ 17 In fact, the law permits other experts to testify as to their conclusions regarding a defendant's mental condition:

In any trial or hearing concerning the defendant's mental condition, physicians and *other experts* may testify as to their conclusions reached from their examination of hospital records, laboratory reports, X rays, electroencephalograms, and psychological test results if the material which they examined in reaching their conclusions is produced at the time of the trial or hearing.

§ 16–8–107(2), C.R.S.2012 (emphasis added). Even lay witnesses "not specially trained in psychiatry or psychology" may testify as to their observations, conversations, and opin-

ions regarding the defendant's mental condition. § 16–8–109, C.R.S.2012. Because the legislature specifically contemplated testimony from witnesses trained in "psychiatry *or* psychology," *see id.* (emphasis added), we see no reason why testimony from psychologists, as opposed to psychiatrists, would be ineffective in this case.

¶ 18 Nor are we persuaded that the prosecution failed to adequately explain Porter's "bizarre" behavior. Although not specifically necessary to satisfy its burden, the prosecution presented evidence providing an alternative explanation for Porter's behavior. As stated above, one of the prosecution's experts opined that Porter's behavior was likely drug-induced and not the result of a mental disease or defect. Because sufficient evidence supported its finding, we conclude that the trial court did not err by finding Porter sane at the time of his offenses. Consequently, we affirm Porter's convictions.

## II. The Prosecution's Cross–Appeal

¶ 19 The prosecution contends that (1) the trial court erred in dismissing Porter's habitual criminal counts; and (2) double jeopardy principles do not prevent the reinstatement of those counts. We agree with the first contention, but disagree with the second, and address each in turn.

### A. Standard of Review

¶ 20 We review de novo the trial court's legal conclusions in dismissing Porter's habitual criminal counts. *See People v. Hall,* 999 P.2d 207, 221 (Colo.2000) (conclusions of law in the dismissal of a charge are reviewed de novo). We also review de novo whether retrial of these counts violates double jeopardy principles. *See People v. Arzabala,* 2012 COA 99, ¶ 19, 317 P.3d 1196.

### B. Dismissal of the Habitual Criminal Counts

¶ 21 Here, Porter's habitual criminal counts were based on charges originally filed in juvenile court. The case was transferred to the district court "at [Porter's] request so that he could accept a favorable plea disposition which he had already negotiated with the prosecution." *People v. Porter,* (Colo.

App. No. 97CA0586, May 27, 1999) (not published pursuant to C.A.R. 35(f)).

¶ 22 Porter later filed a Crim. P. 35(c) motion challenging the validity of his guilty pleas. After a hearing, the postconviction court denied Porter's motion. Porter then filed a second Crim. P. 35(c) motion, asserting his convictions were entered without jurisdiction because the charges were not properly transferred from the juvenile court. The postconviction court denied this motion as well, and Porter appealed.

¶ 23 A division of this court affirmed the postconviction court's order. *Porter,* (Colo. App. No. 97CA0586). The division noted that a hearing considering whether there are factors sufficient to warrant transfer of jurisdiction from the juvenile court to the district court is ordinarily required. However, because Porter had consented to the transfer, and essentially stipulated to the existence of factors supporting transfer, the division concluded that the procedural requirements for transfer were satisfied, despite the lack of a hearing. The division also rejected Porter's contention that he had not knowingly, voluntarily, and intelligently waived the transfer hearing, and ultimately concluded that Porter had failed to meet his burden to rebut the presumption that the convictions were correct.

¶ 24 After the bench trial on Porter's substantive counts, Porter moved to dismiss his habitual criminal counts. He again asserted that his prior convictions were entered without jurisdiction because they were not properly transferred from the juvenile court. The prosecution opposed Porter's motion, arguing that this issue had been previously litigated and the trial court was bound by the decision in Porter's postconviction appeal.

¶ 25 The trial court held that it was not bound by the postconviction appeal because the decision was not published, and was entered in a separate case. It therefore concluded that the prior appeal was not the law of the case. We agree with the trial court that Porter's prior postconviction appeal did not constitute the law of the case. *See Kuhn v. State,* 897 P.2d 792, 795 (Colo.1995) ("[L]aw of the case applies to final decisions

that affect the same parties in the same case."). However, the court should have considered whether the doctrine of collateral estoppel barred Porter from relitigating an issue previously resolved in his prior postconviction appeal.

¶ 26 Our supreme court has not decided whether the government may invoke the doctrine of collateral estoppel in a criminal case against a defendant. *See Byrd v. People,* 58 P.3d 50, 54 (Colo.2002). However, a division of this court has previously addressed a situation nearly identical to Porter's. *See People v. Vialpando,* 809 P.2d 1082, 1085–86 (Colo.App.1990).

¶ 27 In *Vialpando,* the division reversed a defendant's conviction and remanded for a new trial. *Id.* at 1084. Because the issue was likely to arise on retrial, the division also considered whether the defendant could challenge the convictions underlying his habitual criminal counts. *Id.* at 1085–86. The division noted that the defendant had already unsuccessfully challenged these convictions in a previous appeal, and held that, because the defendant's bases for challenging two of the prior convictions were identical to those asserted and rejected in his previous appeal, the doctrine of collateral estoppel barred the defendant from relitigating the issue on retrial. *Id.*

¶ 28 Here, Porter's challenge to the habitual criminal counts, as in *Vialpando,* was based on the same grounds that were asserted and rejected in his previous postconviction appeal. Thus, we likewise conclude that the doctrine of collateral estoppel barred Porter from relitigating the issue, and, therefore, the trial court erred in dismissing the habitual criminal counts. *See id.*

## C. Double Jeopardy

¶ 29 We next consider whether a retrial of Porter's habitual criminal counts would violate double jeopardy principles. We conclude that it would, and that therefore our disposition is limited to disapproval of the trial court's dismissal of those counts.

¶ 30 Federal constitutional double jeopardy protections do not apply to habitual criminal proceedings. *People v. Valencia,* 169 P.3d 212, 222 (Colo.App.2007) (citing *Monge v. California,* 524 U.S. 721, 727–28, 118 S.Ct. 2246, 141 L.Ed.2d 615 (1998)), *abrogated in part on other grounds by Brendlin v. California,* 551 U.S. 249, 127 S.Ct. 2400, 168 L.Ed.2d 132 (2007). However, the double jeopardy protections under the Colorado Constitution, art. II, § 18, do apply. *People v. Quintana,* 634 P.2d 413, 419 (Colo.1981).

¶ 31 A defendant's double jeopardy rights are violated if (1) jeopardy attached at a proceeding; and (2) an event terminated the first jeopardy and exposed the defendant to a second, or double, jeopardy. *Valencia,* 169 P.3d at 222.

### 1. *Quintana*

¶ 32 In *Quintana,* our supreme court considered when jeopardy attaches for the purposes of habitual criminal counts. 634 P.2d at 418. At the time *Quintana* was decided, the jury resolved habitual criminal counts as well as substantive offenses. *Id.* The supreme court noted that although the substantive and habitual proceedings were bifurcated, both phases were conducted before the same jury in one continuous proceeding. *Id.* Accordingly, the court concluded that jeopardy attached for both the substantive and habitual counts upon the impaneling and swearing in of the jury on the defendant's substantive charges. *Id.; accord People v. Hrapski,* 718 P.2d 1050, 1057 (Colo.1986) ("Jeopardy attached with respect to habitual charges upon the impaneling and swearing of the jury for the initial phase of the defendant's trial on the substantive charge of attempted possession of contraband."); *People v. Leonard,* 673 P.2d 37, 39 n. 7 (Colo.1983) (noting that because the trial court dismissed a defendant's habitual criminal counts after jeopardy had attached on the substantive charges, the Colorado Double Jeopardy Clause prohibited retrial of the defendant on habitual criminality).

¶ 33 Also in *Quintana,* the supreme court noted that in *United States v. Scott,* 437 U.S. 82, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978), the United States Supreme Court held that a retrial is not barred under double jeopardy principles when the trial court erroneously

dismisses a criminal charge on grounds unrelated to factual guilt or innocence, even though the dismissal occurs after jeopardy has already attached. *Quintana*, 634 P.2d at 419 n. 6. But the *Quintana* court also noted that it had previously refused to engraft the restrictive rule of *Scott* on the Colorado Double Jeopardy Clause, and had made clear that the precise character of the trial court's judgment, whether an improper judgment of dismissal on grounds unrelated to factual guilt or innocence or an acquittal based on an erroneous application of evidentiary standards, is not determinative of the retrial bar. *Id.* at 420. Rather, a retrial is prohibited whenever the first trial results in a final judgment favorable to the defendant. *Id.*

¶ 34 Notwithstanding *Quintana* and its progeny, the prosecution relies on a decision from a division of this court, *People v. Barnum*, 217 P.3d 908, 911 (Colo.App.2009) *cert. denied*, 2009 WL 3260962 (Colo. Oct. 13, 2009), to assert that jeopardy has not attached for Porter's habitual criminal counts.

### 2. *Barnum*

¶ 35 In *Barnum*, after the jury convicted the defendant on his substantive counts, the trial court held a habitual criminal hearing. *Id.* Before any testimony was presented or exhibits were admitted, the defendant moved to dismiss his habitual criminal counts, and the court granted that motion. *Id.* After the prosecution filed a motion to reconsider, the trial court reversed itself and reinstated the habitual criminal counts. *Id.* The court then recommenced the habitual criminal hearing and adjudicated the defendant as a habitual criminal. *Id.*

¶ 36 On appeal, the defendant in *Barnum* relied on *Quintana* to contend that jeopardy had attached for his habitual criminal counts when the jury was sworn in for his substantive charges, and that the court's reinstatement of his habitual criminal counts after dismissing them violated double jeopardy principles. *Id.* The *Barnum* division noted that when *Quintana* was decided, defendants had a statutory right to a jury determination of habitual criminality, and that the statute was thereafter amended so that such adjudications were to be decided by the court. *Id.*

Therefore, the division concluded that jeopardy did not attach as to the habitual criminal counts when the jury was sworn in for trial on the substantive offenses, and instead would not have attached until the first prosecution witness was sworn in during the habitual criminal proceedings. *Id.*

¶ 37 Because no witness had yet been sworn and no exhibits had been admitted in the habitual criminal proceeding when the trial court dismissed the habitual counts, the division reasoned that jeopardy had not yet attached. *Id.* Accordingly, the division held that the trial court's reinstatement of the habitual criminal charges did not violate Colorado double jeopardy principles. *Id.* .

### 3. Analysis

¶ 38 We are not persuaded by the *Barnum* division's basis for distinguishing *Quintana*. The procedure for habitual criminal proceedings at the time of *Quintana* and the procedure today are remarkably similar. *Compare* § 18–1.3–803, C.R.S.2012, *with* Ch. 202, sec. 1, § 16–13–103, 1981 Colo. Sess. Laws. 952–53. Under both statutes, the habitual criminal counts must be included as separate counts in the indictment, the defendant must be specifically arraigned on those counts, and the fact-finder must determine habitual criminality in a separate hearing and by a separate verdict. The only real distinction is the designated fact finder. At the time of *Quintana*, the fact finder for a defendant's substantive charges—whether the jury or the court in a bench trial—was also the fact finder for a defendant's habitual criminal counts. *See* Ch. 202, sec. 1, § 16–13–103(1), 1981 Colo. Sess. Laws. 952–53. Today, regardless of whether a defendant's substantive charges are resolved in a bench or jury trial, the determination of habitual criminality is the sole province of the trial court. § 18–1.3–803(1), C.R.S.2012.

¶ 39 When a defendant is facing habitual criminal counts, jeopardy attaches on those counts when the substantive offenses are tried. *Quintana*, 634 P.2d at 418. This is true, whether the same or separate fact finders decide the defendant's substantive and habitual criminal counts.

¶ 40 In our view, *Barnum* is distinguishable from the case before us. In *Barnum*, the trial court reinstated the dismissed habitual criminal counts before a final judgment was entered. Here, however, the trial court did not reinstate the dismissed habitual criminal counts. Although not determinative of our analysis, we also note that the court conducted an evidentiary hearing on Porter's motion to dismiss the counts. As part of this hearing, Porter called witnesses and introduced exhibits. After Porter concluded his presentation of evidence, the court asked the prosecution if it would like to call any witnesses or otherwise present its evidence. The prosecution declined to do so.

¶ 41 Furthermore, while in *Barnum*, different fact finders resolved the defendant's substantive and habitual criminal counts— which presumably provided the basis for that division's departure from *Quintana*—here, Porter waived his right to a jury trial and his substantive and habitual criminal counts were both resolved by the trial court. Thus, as in *Quintana*, although the substantive and habitual phases of Porter's trial were bifurcated, both were conducted before a single fact finder. *See* 634 P.2d at 418.

¶ 42 Jeopardy attached for Porter's substantive counts when the first prosecution witness was sworn in at his bench trial. *See* § 18–1–301(1)(d), C.R.S.2012; *Jeffrey v. Dist. Court*, 626 P.2d 631, 636 (Colo.1981). Consequently, under *Quintana*, jeopardy attached for Porter's habitual criminal counts at that time as well. *See* 634 P.2d at 418.

¶ 43 And, as the *Quintana* court noted, an improper judgment of dismissal on grounds unrelated to factual guilt or innocence is not determinative of the retrial bar under the Colorado Double Jeopardy Clause. *Id.* at 420. Instead, retrial is prohibited whenever the first trial results in a final judgment favorable to the defendant. *Id.* Because retrial of Porter's habitual criminal counts would require resolving the factual issues inherent in those counts, double jeopardy prohibits retrial. *See id.* Accordingly, appellate relief in this case is limited to our disapproval of the trial court's dismissal of the habitual criminal counts. *Id.*

¶ 44 The judgment of conviction is affirmed, and we disapprove of the trial court's dismissal of the habitual criminal counts.

JUDGE CASEBOLT and JUDGE DUNN concur.